**Leon I. TAISACAN, Plaintiff-Appellant,**

v.

**Carlos S. CAMACHO, in his official capacity as Governor of the Commonwealth of the Northern Mariana Islands, Defendant-Appellee.**

No. 80–4495.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1981.

Decided Oct. 30, 1981.

---

Randall T. Fennell, Ching, Rosenzweig & Boertzel, Saipan, CM, for plaintiff-appellant.

Peter Van Name Esser, Asst. Atty. Gen., Mariana Island, CM, for defendant-appellee.

Before ADAMS,* GOODWIN and FARRIS, Circuit Judges.

ADAMS, Circuit Judge.

Leon Taisacan, a resident of the Island of Rota, sought a declaratory judgment that two vetoes by Carlos S. Camacho, Governor of the Northern Mariana Islands, were illegal. The district court, addressing the merits of the claim, granted summary judgment in favor of the Governor. Taisacan filed a timely appeal.

Rota is one of the three main islands comprising the Commonwealth of Northern Mariana Islands [CNMI]. See generally *Sablan v. Santos*, 634 F.2d 1153 (9th Cir. 1980); *Ralpho v. Bell*, 569 F.2d 607 (D.C.Cir.1977); and Willens & Siemer, *The Constitution of the Northern Mariana Islands: Constitutional Principles and Innovation in a Pacific Setting*, 65 Geo.L.J. 1373, 1381–87 (1977), for an overview of the history of the Northern Mariana Islands.

In 1976, Congress enacted Public Law 94–241, the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United

---

* Honorable Arlin M. Adams, United States Court of Appeals for the Third Circuit, sitting by designation.

States of America." 48 U.S.C. § 1681 (1976) (app. at 1409). Among other things, the Covenant pledged $4,000,000 a year for 7 years to the CNMI for capital improvements. Of this sum, $500,000 [1] was reserved for Rota. *See* Covenant § 702 [found appended to 48 U.S.C. § 1681].

In 1980, the CNMI legislature passed a budget that included $1,545,000 for capital improvements for Rota. *See* CNMI House Bill 2–88, Title II § 7, item B. The Governor vetoed that item in the budget. He listed four reasons—the first three essentially said that the $1,545,000 appropriation was excessive and inequitable; the last reason was that large sums of money should not be invested in Rota while the people of that island were actively considering withdrawing from the CNMI.

Thereafter, the legislature passed Senate Local Bill 2–1 which appropriated $790,000 for Rota.[2] The Governor vetoed this bill because "appropriation bills may be introduced only in the House of Representatives . . . [and] this is a Senate local bill." After the second veto, Taisacan filed the present complaint, claiming that the vetoes violate the capital improvement appropriations in the Covenant and that the CNMI Constitution does not provide the Governor with veto power over a local bill.

### A.

The District Court for the District of Northern Mariana Islands has both federal and local jurisdiction. *See* Covenant §§ 402(a) and (b), as appended to 48 U.S.C. § 1681. *Sablan v. Santos*, 634 F.2d 1153 (9th Cir. 1980), held that appeals from district court decisions involving local law matters must be taken to a three-judge panel of the district court.

The Ninth Circuit has jurisdiction over the complaint because the issue set forth in it is one "arising under the Constitution, treaties or laws of the United

States." *See* Covenant § 402(a) (48 U.S.C. § 1681). Taisacan alleges a violation of § 702(b) of the Covenant. An alleged violation of the Covenant is a question arising under federal law because the Covenant was approved by Congress on March 24, 1976 as Public Law 94–241 (90 Stat. 263). Moreover, § 903 of the Covenant specifically provides that:

> Nothing herein shall prevent the presentation of cases or controversies arising under this Covenant to courts established by the Constitution or laws of the United States. It is intended that any such cases or controversies will be justiciable in such courts and that the undertakings by the Government of the United States and by the Government of the Northern Mariana Islands provided for in this Covenant will be enforceable in such courts.

Therefore, because this case is not one involving local law, we have jurisdiction to hear the appeal.

### B.

Governor Camacho argues that these appeals must be dismissed because Taisacan lacks standing. He maintains that Taisacan did not establish a sufficient "nexus" between himself and the vetoed legislation to justify standing. The Governor asserts that the injury in question must be characterized as a "public wrong" and that Taisacan's injury does not differ from that of the public generally.

The elements comprising the concept of standing are premised on Article III's "case or controversy" requirement and on prudential concerns. *See Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The Supreme Court has summarized the standing requirement as follows:

> . . . standing to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature

---

1. The Covenant stated that the capital improvements appropriation should be adjusted each fiscal year in light of the Department of Commerce's composite price index. *See* § 704(c).

The parties agree that the $500,000 guaranteed by § 702(b) is now $790,000.

2. Thus, the Senate appropriated the amount reserved for Rota. *See* n.1, *supra*.

of the injury all citizens share. Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution . . . .

*Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 220–21, 94 S.Ct. 2925, 2931–32, 41 L.Ed.2d 706 (1974).

Taisacan brought this action as a citizen of Rota who claimed to be, along with all other citizens, a beneficiary of certain commitments in the Covenant to Establish the Commonwealth of the Northern Mariana Islands. His complaint asserts that the Governor's veto deprived citizens of Rota of the benefit of capital improvement funds. Significantly, Taisacan's pleading does not allege that he will suffer any particular individual injury distinct from that of the citizenry at large.

■ It has been a consistent theme of the Supreme Court's standing jurisprudence that citizens who simply assert a general interest in the operations of government do not enjoy a sufficiently concrete personal stake in the outcome to have standing to sue. As the Court declared over forty years ago in *Ex Parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937), "It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." The Court specifically reaffirmed the vitality of *Levitt* in *Schlesinger, supra.* Denying standing to a group that sought to vindicate society's interest in an independent Congress by challenging the Army Reservist status of several members of Congress, the Supreme Court disclosed that "standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Id.* at 220, 94 S.Ct. at 2931.

The need to demonstrate particular individual injury is often an insurmountable hurdle for plaintiffs who wish to challenge an executive veto. In one such case, especially apposite here, *Saffioti v. Wilson,* 392 F.Supp. 1335 (S.D.N.Y.1975), the court noted that the principle of *Schlesinger* would preclude most attacks upon the executive's exercise of the veto power. The court concluded that Saffioti's case presented a rare instance where the plaintiff had been able to demonstrate a nexus between the negated legislation and his individual interests, because the vetoed item was a private bill granting Saffioti the right to press a time-barred claim against the state. *Id.* at 1343, n. 10.

■ In the present case, Taisacan has alleged no such unique harm from the failure of the capital improvements appropriation to become law. He does not even contend, for example, that he had a contract to build one of the halted capital projects, or that his children would attend one of the planned schools, or that he lived in the service area for a proposed hospital. Although Taisacan conclusorily asserts that he has suffered concrete harm as a result of the veto, he points to no specific examples. An examination of the complaint reveals that Taisacan merely asserts that *all* citizens of Rota will be denied the benefit of improved services. This sort of generalized injury to the quality of life presents the type of abstract harm that typifies many citizen complaints against governmental action. But the Supreme Court has emphatically closed the federal courthouse door to those who wish to air their generalized grievances in a judicial forum. A personal stake in the outcome is an essential dimension of the Article III "case or controversy" requirement. *See Schlesinger, supra; United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

These Supreme Court precedents compel the conclusion that Taisacan lacks standing, solely in his capacity as a citizen of Rota, to assail the impact of the gubernatorial veto on the Island's residents. Accordingly, we dismiss the appeal and remand the matter

to the district court with directions to dismiss the lawsuit for lack of standing.