Carlos S. CAMACHO, Governor of the
Commonwealth of the Northern Maria-
na Islands, et al., Plaintiffs-Appellees,

v.

CIVIL SERVICE COMMISSION et al.,
Defendants-Appellants.

No. 81–4155.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 17, 1981.

Decided Feb. 1, 1982.

As Amended Feb. 8, 1982.

Randall T. Fennell, Ching, Rosenzweig & Boertzel, Saipan, for defendants-appellants.

Peter Van Name Esser, Michael De Agnelo, Saipan, for plaintiffs-appellees.

Before WALLACE and FERGUSON, Circuit Judges, and TANNER,* District Judge.

FERGUSON, Circuit Judge:

## I. BACKGROUND.

This case involves a separation of powers dispute between the executive and legislative branches of the government of the Northern Mariana Islands ("NMI"). At issue also is whether this court has jurisdiction to hear an appeal from a local law decision of the District Court for the NMI.

* Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

The origin of this case lies in an electoral switch in the November, 1979 general elections conducted in the Commonwealth of the NMI. Before the election, both parts of the bicameral legislature were controlled by the Territorial (Republican) Party. On November 4, 1979, the general election results changed the House of Representatives from a Territorial to a Democratic Party majority that would take office on January 14, 1980; the Senate remained controlled by the Territorial Party. Five days later, during the "lame duck" period, the then President of the Senate requested the Civil Service Commission and its Personnel Officer, Jesus Mafnas, to make determinations to classify employees of the First Commonwealth Legislature as members of the Civil Service System.

On November 19, 1979, the Commission approved Personnel System Rules and Regulations ("Rules") for members of the executive branch. These Rules were approved by the legislature before the termination of the lame duck session. On December 20, the Commission classified various employees of the legislature as within the protection of the Civil Service System.

The Civil Service Commission consists of seven members; the legislature appoints six, and the executive appoints one. The Commission was established pursuant to Public Law 1–9, which was enacted August 11, 1978, over the governor's veto.

Plaintiffs-appellees are Governor Carlos Camacho and Speaker of the House Joaquin Pangelinan. They brought suit in the trial division of the District Court of the NMI, claiming that Public Law 1–9, which permitted appointment by the legislature of six members of the commission, violated a separation of powers requirement in the constitution of the NMI. Plaintiffs further contended that the Rules and classifications never took effect because of a failure to comply with procedural requirements of local administrative law.

The trial court declared that the appointment provision violated the separation of powers provision in the constitution of the NMI. The court further declared the classi-

fication of legislative employees invalid, but determined that the Rules met the procedural requirements. Both parties appealed to the appellate division of the district court. A three-judge panel granted complete summary judgment for the plaintiffs by affirming the trial court insofar as it had ruled for plaintiffs and reversing the ruling that the classification had met procedural requirements. Defendants appealed to this court.

On appeal, there are four issues:

1. Whether this court has jurisdiction to hear an appeal from a decision of the Appellate Division of the District Court of the NMI involving an issue solely of local law.

2. Whether the appellate division correctly held the appointment scheme violative of separation of powers.

3. Whether the appellate division correctly held that certain rules and regulations were invalidly promulgated by the Commission.

4. Whether the appellate division correctly held invalid the classification of legislative employees as within the civil service.

## II. THIS COURT HAS JURISDICTION OVER ALL APPEALS FROM THE APPELLATE DIVISION OF THE DISTRICT COURT FOR THE NORTHERN MARIANA ISLANDS.

Plaintiffs contend that this court does not have jurisdiction over appeals from local law decisions of the appellate division of the District Court for the Northern Mariana Islands. They argue that the appellate division of the district court, by analogy to a state supreme court, should be immune from federal review of a local question of law. Thus, the threshold jurisdictional question confronting this court requires an analysis of the status of the appellate division. This analysis must begin with background information about the court system that has been established in the Northern Marianas.

The convention that produced the Constitution of the NMI had three basic alternatives regarding the commonwealth judicial branch:

first, to create a local court system with jurisdiction over all local cases; secondly, to create no local courts, leaving the federal district court with jurisdiction over local cases; thirdly, to create local courts with limited trial and appellate jurisdiction, perhaps with some constitutionally prescribed schedule for the gradual assumption of increased jurisdiction by these courts.

Willens & Siemer, *The Constitution of the Northern Mariana Islands: Constitutional Principles and Innovation in a Pacific Setting*, 65 Georgetown L.J. 1373, 1442 (1977) (footnote omitted). Balancing considerations involving autonomy and efficiency, the convention decided to set up a dual system. *Id.* at 1442, 1443.

The Northern Marianas now have a "District Court for the Northern Mariana Islands." The court is so named because, unlike a "United States District Court," it has original jurisdiction over local civil matters involving more than five thousand dollars. *See Guam v. Olsen,* 431 U.S. 195, 196 n.1, 97 S.Ct. 1774, 1776 n.1, 52 L.Ed.2d 250 (1977). The structure of the court system shows that the convention chose to fit the court system of the NMI into the federal system, rather than to begin anew and create the equivalent of a state court system to hear all local matters. The court is divided into trial and appellate branches. In the case on review, which raises solely questions of the local law of the Commonwealth, trial was held in the trial division of the district court and appeal was taken to the appellate division of the district court.

■ Article IV of the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America" ("Covenant") provides for appeals from the appellate division. Congress has implemented Article IV of the Covenant by establishing the District Court of the Northern Mariana Islands and specifying the jurisdiction of the court, both original and appellate. *See* [1977] U.S.

Code Cong. & Ad.News 3307, 3307. Appeals from the appellate division are governed by 48 U.S.C. § 1694c. Subsection (b) thereunder provides that the District Court for the NMI shall be treated like the District Court of Guam. Like the District Court of the NMI, the District Court of Guam is also divided into a trial and appellate division. Judgments of the Guam appellate division, even those involving solely questions of local law, are appealable to this court. *Corn v. Guam Coral Co.,* 318 F.2d 622, 628 (9th Cir. 1963); 28 U.S.C. § 1291. Section 1694c(b) accordingly furnishes jurisdiction over the instant appeal.

Plaintiffs attempt to avoid the above analysis with three arguments. First, they maintain that Guam was forced to cede appellate jurisdiction to its district court, while the Commonwealth did so voluntarily. The relevance of plaintiffs' purported distinction is never specified. However the district appellate division acquired its jurisdiction, it remains clear that that jurisdiction is not being exercised by an autonomous court of the NMI. Second, the plaintiffs point to the fact that Guam, unlike the Commonwealth of the NMI, lacks both a constitution and a three-branch republican form of government. Again, this is a distinction without significance for federal jurisdiction.

Finally, plaintiffs seek to avoid 48 U.S.C. § 1694c(b) through reliance on 48 U.S.C. § 1694c(a), which defines the relationship between courts established by the Constitution or laws of the United States and courts of the NMI:

The relations between the courts established by the Constitution or laws of the United States and the courts of the Northern Mariana Islands with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States and the courts of the several States in such matters and proceedings, except as otherwise provided in article IV of the

covenant: *Provided*, That for the first fifteen years following the establishment of an appellate court of the Northern Mariana Islands the United States court of appeals for the judicial circuit which includes the Northern Mariana Islands shall have jurisdiction of appeals from all final decisions of the highest court of the Northern Mariana Islands from which a decision could be had in all cases involving the Constitution, treaties, or laws of the United States, or any authority exercised thereunder, unless those cases are reviewable in the District Court for the Northern Mariana Islands pursuant to section 1694b of this title.

Had the Commonwealth chosen to vest jurisdiction over appeals from local matters in its own supreme court, subsection (a) would mandate that that NMI Supreme Court be treated like any other state supreme court, its decisions being appealable to the United States Supreme Court. For reasons of economy, the Commonwealth rejected that course, vesting jurisdiction instead in the appellate division of the NMI.

Relying on § 1694c(a), plaintiffs further argue that the clause beginning *"Provided . . ."* deprives this circuit of jurisdiction to hear appeals involving local issues of the law. Apparently plaintiffs believe that since the clause only gives the circuit jurisdiction to hear federal issues on appeal from the highest court of the NMI, only federal issues could be appealed from the appellate division to the circuit court. This argument is a non-sequitur. The clause expands the jurisdiction of the circuit to hear appeals from a high court which, if established, would be functionally similar to a state supreme court; the clause does not restrict the jurisdiction of this circuit to hear appeals from the appellate division. The appellate division is created by the laws of the United States; it does not become transmuted into a court of the NMI merely because the NMI granted the court some discretion it could have withheld. Because subsection (a) forecloses Ninth Circuit review only of decisions by a court of the NMI, and because no such court has yet been established, it affords plaintiffs no help.

Any doubt as to the correctness of the foregoing analysis is resolved by *Sablan v. Santos*, 634 F.2d 1153 (9th Cir. 1980). *Sablan* held that this court is without jurisdiction to hear an appeal from a *trial* decision of the District Court for the NMI rendered with respect to a question of local law and that instead the appellate division of the district court should hear the appeal. One *ratio decidendi* of the case was that the parties' rights were preserved since "any final decision rendered by the district court will be appealable to this court." *Id.* at 1155. *Sablan* based that conclusion on the following analysis:

48 U.S.C. § 1694c(b) provides that "[t]hose portions of Title 28 which apply to Guam or the District Court of Guam shall be applicable to the Northern Mariana Islands or the District Court for the Northern Mariana Islands, respectively, except as otherwise provided in article IV of the covenant." 28 U.S.C. § 1291 provides that final decisions of the District Court of Guam shall be appealable to the court of appeals. Nothing in article IV of the Covenant alters this rule. Thus, appellate division decisions are appealable to the court of appeals.

*Id.* at 1155 n.2. We now adopt that analysis as our holding on the jurisdictional issue.

The jurisdictional question decided in this case is distinct from the jurisdictional question addressed in dictum in *Taisacan v. Camacho*, 660 F.2d 411 (9th Cir. 1981), and the outcome here is completely consistent with the jurisdictional discussion in that case. The *Taisacan* plaintiff sought declaratory judgment that in vetoing two appropriations bills, Governor Camacho had violated a provision of the Covenant which pledged an annual sum from the United States to the Northern Marianas for capital improvements, and reserved a set portion of this sum for the island of Rota. Although the appeal was dismissed because Taisacan lacked standing, the court noted in dictum that "[a]n alleged violation of the Covenant is a question arising under federal law because the Covenant was approved by Con-

gress on March 24, 1976 as Public Law 94–241 (90 Stat. 263)." The court concluded that such a case would be appealable directly from the trial division to this circuit.

We do not understand the *Taisacan* court to have meant, however, that every case which somehow implicates the Covenant is necessarily a case arising under federal law. The whole government and laws of the Northern Mariana Islands are, in a sense, creatures of the Covenant, and too broad a reading of the *Taisacan* dictum would annihilate the distinction between local law and federal law in the Northern Marianas. In contrast with *Taisacan*, the primary issue in this case involves the separation of powers requirement of the Constitution of the NMI. The Covenant is peripherally involved because by its terms it allegedly mandates such a requirement in the constitution, and because it is instrumental in interpreting the constitutional provision. We do not think that kind of implication of the Covenant makes this into a federal case.

We note in passing that neither this case nor *Taisacan* nor *Sablan* settles a related jurisdictional issue: whether a case arising under federal law *can* be appealed from the trial to the appellate division of the district court, or whether such an appeal must always come directly to this court. We leave the resolution of that question to a case that presents it properly.

## III. THE DISTRICT COURT'S INTERPRETATIONS OF LOCAL LAW SHOULD NOT BE DISTURBED.

■ Although we have decided that this court has jurisdiction, we need not try the case de novo. "Interpretations of local law by a district court sitting in the locality are entitled to great weight. They will not be disturbed unless clearly wrong." *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 752 (9th Cir. 1981)

(citation omitted). *See Simpson v. United States*, 652 F.2d 831, 832 (9th Cir. 1981). The District Court for the NMI has more familiarity with the context in which Commonwealth law operates than does this court. The legal conclusions of the district court should not be disturbed on appeal unless they are clearly wrong, and our review concludes they are not.

In conducting this review, we recognize the formidable task that confronted the District Court of the NMI, and the serious and careful consideration that the trial and appellate judges devoted to their task. Their task required them to apply and interpret the constitution of the Northern Mariana Islands in a separation of powers dispute between the executive and legislature. Such judicial review of the constitutionality of a statute is a settled principle of American law. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1805). In addition to the landmark federal cases, a virtually limitless number of state court cases are on point. A familiar reference cites cases from twenty-eight states squarely supporting the principle of judicial review. 16 Am.Jur.2d *Constitutional Law* § 150 at n.34. Mindful perhaps of Marshall's dictum that "it is a constitution we are expounding," the judges in the district court did not merely substitute their own opinion of the meaning of the constitution for that of the legislature; instead, the trial and appellate judges of the district court carefully scrutinized the legislation in determining that it clearly violated the command of the constitution of the NMI.

### A. *Section 3(a) of Public Law 1–9 is Invalid.*

■ Section 3(a) of Public Law 1–9 provides for the establishment of a seven-member Civil Service Commission.[1] It empow-

---

1. Section 3(a), concerning the establishment of a Civil Service Commission, provides:

 *Establishment.* There is hereby established a Civil Service Commission which shall consist of seven (7) members to be appointed as follows: one (1) shall be appointed by the Governor; three (3) shall be

appointed by the President of the Senate; and three (3) shall be appointed by the Speaker of the House of Representatives. The President of the Senate shall appoint at least one (1) female and at least one (1) person who is a resident of Rota. The Speaker of the House of Representatives

ers the governor to appoint only one commission member. The rest are appointed by the heads of the two houses of the Commonwealth legislature. The Commission was delegated the task of administering the personnel system of the government, approximately 90% of whose members are within the executive branch.[2] Thus, not only are six-sevenths (86%) of the Commission members appointed by the legislature, but the Commission wields its power over government employees who are mostly within the executive branch. Plaintiffs challenge this appointment scheme as a violation of the separation of powers required by the constitution of the NMI. It should be noted that plaintiff Camacho does not claim that the Commonwealth legislature has *no* power of appointment, only that the present allotment of the appointment power clearly violated the separation of powers requirement.

### 1. *Separation of Powers.*

Defendant relies heavily on *Parcell v. Kansas*, 468 F.Supp. 1274, 1277 (D.Kan. 1979), *aff'd sub nom. Parcell v. Governmental Ethics Com'n.*, 639 F.2d 628 (10th Cir. 1980): "States are not required to abide by the doctrine of separation of powers." But the Covenant under which the Commonwealth was chartered demonstrates that, unlike the states, the Commonwealth is bound by the doctrine of separation of powers:

SECTION 203. (a) The Constitution [of the NMI] will provide for a republican form of government with separate executive, legislative and judicial branches . . . .

(b) The executive power of the Northern Mariana Islands will be vested in a popularly elected Governor . . . .

(c) The legislative power of the Northern Mariana Islands will be vested in a popularly elected legislature and will extend to all rightful subjects of legislation.

*Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America,* art. II, § 203, 48 U.S.C. § 1681 note. Furthermore, as the trial court concluded, "That the Constitution of the Northern Mariana Islands (Constitution) followed this dictate in the Covenant is also clear. Articles II, III and IV of the Constitution establish the three branches of government." Because the Covenant and Constitution create a republican government of separate powers, the legislative appointment process at issue must violate them, under the separation of powers doctrine, if that process is not a proper legislative function.

*Springer v. Philippine Islands,* 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845 (1928), which struck down an act of the Philippine legislature on separation of powers grounds, establishes that the subject of this appeal—the power of appointment—is properly characterized as executive:

It may be stated then, as a general rule inherent in the American constitutional system, that, unless otherwise expressly provided or incidental to the powers conferred, the legislature cannot exercise either executive or judicial power. . . .

\*　　\*　　\*　　\*　　\*　　\*

Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or *appoint the agents charged with the duty of such enforcement. The latter are executive functions.*

*Id.* at 201-02, 48 S.Ct. at 482 (emphasis added). Unless defendants can show that appointing 86% of the Commission, which wields most of its authority over employees of the executive branch, was a power "otherwise expressly provided" to the legislature, the section under scrutiny falls afoul of the Commonwealth's separation of powers doctrine.

---

shall appoint at least one (1) person who is of Carolinian descent and at least one (1) person who is a resident of Tinian. The Commission shall select a chairman by a majority vote. No member of the Commission may be a candidate for public office or hold an elect-

ed position or a position in the Executive Branch which is filled by appointment of the Governor.

2. Appellate Division Opinion at 12.

Defendants attempt to furnish such an express provision from three sources. First, they cite art. III, § 16 of the NMI constitution: "The legislature shall provide for a non-partisan and independent civil service commission...." Defendants argue that the legislature's power to appoint commission members is necessarily incidental to its duty to "provide for" the commission. However, the legislature could have had power to provide for the establishment of a civil service commission without having a power to make appointments; the power to appoint commission members is not necessarily incidental to the power to provide for a commission.

Second, defendants cite art. II, § 1 of the NMI constitution: "The legislative power of the Commonwealth shall extend to all rightful subjects of legislation ...." Defendants argue that the power of appointment is a "rightful subject of legislation" because it is "incidental to the lawmaking process." This second argument merely begs the question of whether the appointment of six-sevenths of the civil service commission members is a rightful subject of legislation where separation of powers is required. Defendants' first two arguments are unsupported by authority or analysis.

Lastly, defendants quote the Analysis of the Constitution regarding art. III, § 16, *supra*: "The legislature is free to decide whether the governor should appoint the commission or whether another means should be selected to ensure its independence and non-partisan status." This language bolsters defendants' position but is not decisive for three reasons.

First, by its terms the language merely raises the possibility of depriving the governor of *direct* appointment power. Perhaps it was intended that a lower executive officer would make the appointment or that the governor would appoint a blue-ribbon panel to make the selections. The language falls short, however, of being an express grant to the legislature of an appointment power that would otherwise contravene the separation of powers requirement. Second, the language from the Analysis posits that

the legislature will allocate the appointment power so as to ensure the commission's non-partisan status. The court below could have concluded from the record before it that § 3(a) did not accomplish this goal. Third, the Analysis does not have the force of law. The appellate division considered the Analysis in the context of all the laws of the NMI, and whether the Analysis be viewed as scholarly commentary or legislative history, the court below was free to reach its view based on its careful, independent reading of the constitutional provisions quoted above. Because it was not clearly wrong for the district court to decide that the constitution could not reasonably be construed to support § 3(a), the court's construction will stand.

### 2. *Case Law from Other Jurisdictions.*

The bulk of the parties' discussion of § 3(a) centers on drawing parallels to cases decided in other jurisdictions. That discussion is of minor importance and cannot change the conclusion reached in the preceding section. As far as we know, no previous case discussing the local separation of powers issue has arisen in the District Court of the NMI. Thus, that court was not bound by precedent; its search for guidance in state and federal case law could be at most a search for persuasive authority, not a search for binding precedent.

Defendants argue that it is inappropriate to rely on *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), since that case arose under federal rather than state law, to strike down a statute in the NMI for violating the separation of powers doctrine. *Buckley* struck down the Federal Election Commission, which had four voting members appointed by the Congress and two by the President, because the appointment procedure violated the separation of powers doctrine. Here, the court below actually agreed with the defendants that *Buckley* is not controlling, but nevertheless found it "very persuasive authority to guide us in interpreting the subject statute in light of the Commonwealth Constitution."

Defendants rely on *Parcell v. Kansas*, 468 F.Supp. 1274 (D.Kan.1979), *aff'd sub nom. Parcell v. Governmental Ethics Com'n*, 639 F.2d 628 (10th Cir. 1980), which held that appointment of five members of a Governmental Ethics Commission by the Kansas governor and appointment of six by the legislature did not violate the doctrine of separation of powers. However, the facts in *Parcell* were quite different than in this case; for example, the imbalance between the appointment powers of the legislature and executive was less striking than it is here. In *Parcell*, the court applied a four-factor analysis to the facts.[3] Here, use of that same four-factor analysis might well produce the same conclusion reached by the appellate division.

Defendants argue that whereas the federal government is one of enumerated powers, state governments are not; therefore, state legislatures should have broad power to legislate, unless they are specifically prohibited from doing so. In support of its argument that the legislature of the NMI should not be limited in its power to legislate, the defendants cite a number of state law cases from the turn of the century to the 1920's. Plaintiff counters those cases with *Bradner v. Hammond*, 553 P.2d 1 (Alaska 1976), which relied on separation of powers doctrine to limit the legislature's confirmation authority over executive appointments. In addition, plaintiffs claim and defendants deny that *Dunbar v. Cronin*, 18 Ariz. 583, 164 P. 447 (1917), on which defendants rely, has been overruled by *Ahearn v. Bailey*, 104 Ariz. 250, 451 P.2d 30 (1969). All of these cases involve state court decisions applying the separation of powers doctrine and different state constitutions under varying factual circumstances. None of these cases is binding on the District Court of the NMI, which confronted the separation of power doctrine clearly set forth in the constitution of the NMI, and relied on federal and state cases for guidance. Defendants' dismay that the district court did not accept their cases as more persuasive is not grounds for reversing the district court.

## B. The Commission's Rules and Regulations Are Invalid.

On November 19, 1979, the commission approved proposed Personnel System Rules and Regulations for members of the executive branch. The appellate division struck down those rules for failure to comply with 17 Trust Territory Code (T.T.C.) § 4(1)(a) and § 4(1)(b), and Public Law 1-8. Title 17 T.T.C. § 4 provides procedures for adoption of regulations.[4] Subpart (1)(a) requires at

---

**3.** Relying on Kansas case law, *Parcell* considered the following factors to be relevant in determining whether usurpation of power by the legislative branch has occurred:
 1. The essential nature of the power being exercised;
 2. The degree of control by the legislative department in the exercise of the power.
 3. The nature of the objectives sought to be obtained by the legislature.
 4. The practical result of the blending of powers as shown by actual experience over a period of time where such evidence is available.

468 F.Supp. at 1278.

**4.** Title 17 T.T.C. § 4(1)(a)–(b) provides:
 (1) Prior to adoption, amendment or repeal of any regulation, the agency shall:
 (a) give at least thirty days' notice of its intended action by publication in the Territorial Register and by posting in convenient places in the district centers and in local government offices in each district, both in English and in the principal vernacular. The notice shall include:
 (i) a statement of either the terms or substance of the proposed regulation or a description of the subjects and issues involved,
 (ii) reference to the authorities under which that action is proposed, and
 (iii) the time when, the place where, and the manner in which interested persons may present their views thereon.
 (b) afford all interested persons reasonable opportunity to submit data, views, or arguments, in writing. In all proceedings under this Section, opportunity for oral hearing must be granted if requested by the Congress of Micronesia or a Committee thereof, or a government subdivision or agency. Hearings afforded pursuant to this provision shall be conducted in accordance with Section 9 of this Chapter. The agency shall consider fully all written and oral submissions respecting the proposed regulation. Upon adoption of a regulation, the agency, if requested to do so by an interested person either prior to adoption or within thirty days thereafter,

least thirty days' notice of agency action by publication of intended regulations in the Territorial Register and by posting in convenient places. Subpart (1)(b) requires that interested persons be afforded a reasonable opportunity to submit arguments and comments. Public Law 1–8, section 3(f), chapter 3, provides that the Office of the Attorney General is:

> To be responsible for the publication, compilation, and codification of laws, rules, regulations and executive orders; PROVIDED, however, that no rules or regulations shall take effect until they have been published for at least thirty (30) days in the Commonwealth Register.

The Trust Territory Code was in existence before the NMI gained commonwealth status. It remains "in force and effect until and unless altered by the Government of the Northern Mariana Islands." Covenant, art. V, § 505, 48 U.S.C. § 1681 note. There has been to date no alteration of 17 T.T.C. relevant to this case. Public Law 1–8 was enacted August 10, 1978, one day before the enactment of the law establishing the Commission, Public Law 1–9.

 Defendants concede that the procedural requirements of 17 T.T.C. § 4 and Public Law 1–8 have never been met with regard to the Rules here under review. Therefore, if those apply, they will prevent the regulations from ever having taken effect.

Defendants, however, maintain that while the earlier laws prescribe the basic model for rulemaking, they allow exceptions by express provisions in other laws, for 17 T.T.C. § 14 provides that the administrative procedures in the Trust Territory Code remain in effect "unless Congress shall by law hereafter provide otherwise." Defendants conclude that the legislature is free to prescribe a different method for an agency to promulgate rules and that the legislature did that in Public Law 1–9.

According to the defendant, the exception from the generally effective procedural requirements of Public Law 1–8 and 17 T.T.C. § 4 is contained in Public Law 1–9 § 8(a):

> Section 8. *Adoption and Content of Regulations.*
>
> (a) *Adoption.* The Civil Service Commission shall prepare reasonable rules and regulations to carry out the provisions of this Act. Upon adoption by the Commission and approval by the Legislature, such rules and regulations shall have the force and effect of law.

Because this language does not indicate that the method of promulgation is *"in addition to"* the former laws, defendants infer that this procedure must be an alternative to the former laws. The italicized requirement that the provision should explicitly state that it is "in addition to" previous provisions, plus the inference that otherwise the provision will be considered a new alternative, are to be found only in defendants' brief, not in statutory or case law. In fact, the language in Public Law 1–9 § 8(a) need not be read as inconsistent with fulfilling all the procedural requirements of prior law. Without any compelling reason to read this section as an exception to the generally effective requirements of the former laws, defendants' argument fails.

Finally, the Commission defends the Rules because of their approval by the NMI Congress through a Senate Joint Resolution on January 10, 1980. It is unclear how or why the Senate Joint Resolution would validate rules passed in violation of the procedural requirements discussed above. Nor have defendants advanced any theory under which a Senate Joint Resolution fits into the scheme of Commonwealth laws in such a way as to effectively validate otherwise ineffective Rules. We therefore see no reason to reject the determination of the court below on this issue.

## C. *The Commission's Classification of Legislative Jobs Is Invalid.*

On December 20, 1979, defendant Civil Service Commission classified various em-

---

shall issue a concise statement of the principal reasons for and against its adoption, in-

corporating therein its reasons for overruling the considerations urged against its adoption.

ployees of the legislature as within the civil service. The record does not contain this ruling by the Commission.

Defendants claim that the Commission made this classification pursuant to its powers under Public Law 1–9 § 3(f)(1), which authorizes the Commission to prepare "proposed personnel policies of the Commonwealth" which become effective if not disapproved by the legislature within thirty days. Defendants maintain further that "[i]t cannot be reasonably disputed that the Commission's determination was a 'proposed personnel policy.'" Nonetheless, plaintiff Pangelinan does dispute the point by calling § 3(f)(1) inapplicable to the action under review. Because the Commission's documentary determination is not part of the record before this court, it is impossible to evaluate which party is correct. The defendants, as appellants, have accordingly failed to satisfy their burden of showing the judgment below erroneous in this regard.

Because defendants have not demonstrated that the contested action is to be judged under § 3(f)(1), the normal rules applicable to all agency rulemaking in the NMI apply. As was shown in part III(B) above, 17 T.T.C. § 4 and Public Law 1–8 require notice and comment. Neither was afforded with respect to these challenged classifications. The district court was accordingly correct in striking down the proposed classifications, even if it based that part of its holding on different reasoning.

The judgment of the appellate division of the District Court for the Northern Mariana Islands is affirmed in its entirety.