**Decided November 10, 1983**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

BENJAMIN T. MANGLONA, et al., )    CTC NO. 80-177
                              )
              Appellees,      )    DCA NO. 82-9009
                              )
         vs.                  )
                              )        OPINION
CARLOS S. CAMACHO, et al., .  )
                              )
              Appellants.     )
_____)

Before:  LAURETA and GILLIAM, District Judges, and SOLL*
         Associate Judge

Soll, Associate Judge:

         This is an appeal from the Commonwealth Trial Court's
decision granting summary judgment and denying motion by appellants
for leave to file a Third Party Complaint.

                STATEMENT OF THE FACTS/CASE

         The action was brought by the elected legislators from
the island of Rota to prevent the executive from continuing the
employment of appointed resident department heads of certain line
departments of government and to recover salary payments made to
them and alleged to have been illegal.

*Hon. Herbert D. Soll, Commonwealth Trial Court Associate Judge,
 sitting by designation pursuant to 48 U.S.C. § 1694(b).

821

Article III, Section 17(b) of the Constitution of the Commonwealth provides for the appointment of supervisory persons on Rota and Tinian and subjects such appointments to advice and consent of a majority of the legislators from the senatorial district in which any appointed resident department head is to serve. The legislators of Rota disapproved of the appointments and brought the action leading to this appeal, after learning that the executive branch continued the rejected appointees in their positions.

The trial court entered partial summary judgment for appellees on October 2, 1981 and set forth those factual issues left to be resolved. Final judgment was entered on February 2, 1982 after the resolution of remaining factual issues.

On January 13, 1982, more than three months after the entry of partial summary judgment, appellants moved for leave to allow the filing of a third-party complaint. The trial court denied that motion. Appellants appeal asserting that the trial court erred both in granting summary judgment and in denying the requested leave to file a third-party complaint.

///
///
///
///
///
///
///

## STANDARD OF REVIEW

The standard for reviewing a grant or denial of a motion for summary judgment is well-settled. Under Rule 56 of the Rules of Civil Procedure, summary judgment is proper when it appears that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The reviewing court's role is limited to determining whether there is a genuine issue of material fact and, if not, whether the substantive law was correctly applied. Hernandez v. Southern Nevada Culinary & Bartenders, 662 F.2d 617, 619 (9th Cir. 1981); Yazzie v. Olney, Levy, Kaplan & Tenner, 593 F.2d 100, 102 (9th Cir. 1979).

## STANDING

Appellants appear to be attacking the trial court's ruling on the standing of the plaintiffs to sue as well as, should standing be found, the right to recover salaries received from the Commonwealth Treasury after the appointments ceased to be legal. Put another way, appellants assert that a finding of mere standing to bring a taxpayer's action does not permit a plaintiff to go beyond enjoining the illegal act. The recovery of illegal payments, it is argued, requires a showing of injury beyond that of an ordinary taxpayer. The brief of appellants does not clearly separate these issues, but we draw from the brief that intention.

///

The first issue presented is whether appellees had standing to challenge the allegedly unconstitutional acts of the executive departments. Appellants rely on the reasoning enunciated by the United States Supreme Court in Massachusetts v. Mellon, (Frothingham) 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), to support their argument that appellees have alleged insufficient injury to warrant standing.

In Frothingham, plaintiff, a United States taxpayer, sought to enjoin the execution of a federal appropriations act on the basis of alleged invalidity. The Supreme Court, recognizing the issue as one of first impression, held that the taxpayer lacked standing to challenge the federal act. The Court reasoned that the taxpayer's interest in the moneys of the United States Treasury is shared with "millions of others" and is "comparatively minute and indeterminable." The effect on future taxation of any federal expenditure is too "remote, fluctuating and uncertain." The Court concluded that any pecuniary interest that the plaintiff had was too miniscule and the question was "essentially a matter of public and not individual concern." The rationale of the decision, determining standing in public actions according to pecuniary interest, retains its precedential value today. Valley Forge Christian College v. Americans United For Separation of Church and State, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

///

///

///

Appellees attempt to distinguish their action from that in *Frothingham* by asserting that whereas the *Frothingham* plaintiffs sought standing as federal taxpayers, appellees seek standing as local taxpayers of the Commonwealth. This is a valid distinction and was recognized in *Frothingham*:

> The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate. It is upheld by a large number of state cases and is the rule of this court. *Crampton v. Zabriskie*, 101 U.S. 601, 609, 25 L.Ed. 1070.

43 S.Ct. at 601.

The application of this analysis in the territorial jurisdictions logically follows. In *Reynolds v. Wade*, 249.F.2d 73, (9th Cir. 1957), the Ninth Circuit recognized the standing of a territorial taxpayer to sue Alaska (then a territory) to enjoin the unlawful expenditure of territorial funds. The court began its analysis by acknowledging that as against the United States, "[t]he law is settled that a Federal taxpayer cannot sue to enjoin alleged unlawful expenditure of funds from the Federal treasury in the absence of a showing of direct, special injury [citing *Frothingham*]." However, the court continues, the *Frothingham* rationale becomes less persuasive in jurisdictions with much smaller populations. The smaller the population, the greater the pecuniary interest of its taxpayers in the treasury. The court noted that most states allow taxpayer suits to enjoin unlawful expenditure of

state funds.  In view of the foregoing, the court stated:

> We conclude that an Alaskan tax-
> payer should be allowed to challenge
> alleged misapplication of funds,
> either municipal or Territorial,
> in order that the taxpaying public
> may have recourse to a prompt
> remedy to prevent irremediable
> public injury.

249 F.2d at 77.  Accord, Buscaglia v. District Court of San Juan,
145 F.2d 274 (1st cir. 1944)(recognizing standing in Puerto Rico);
Castle v. Kopena, 5 Haw. 27 (1883); Lucas v. American Hawaiian
E. & C. Co., 16 Haw. 80 (1904); Castle v. (Atkinson) Secretary
of Hawaii, 16 Haw. 769 (1905)(recognizing standing in the Hawaiian
Islands before statehood); Smith v. Virgin Islands, 329 F.2d 131
(3rd Cir. 1964)(recognizing standing in Virgin Islands); Island
Equipment Land Co. v. Guam Economic Development Authority, 474
F.2d 753 (9th Cir. 1973)(recognizing standing in Guam).[1]

- - - - - - - - - -

[1] We do not read Government of Guam v. Bird, 398 F.2d 314 (9th Cir.
1968), nor Taisacan v. Camacho, 660 F.2d 411 (9th Cir. 1981) as
reaching contradictory conclusions.  In Bird, the plaintiffs
attempted to sue on behalf of the Government of Guam to enjoin
the alleged unlawful activity of a third party.  The court held
that the plaintiffs had insufficient interest to acquire standing
as the Government could readily bring the action.  The court
implicitly recognized the validity of a Reynolds action where the
Government is the defendant and plaintiff's only available remedy
is through judicial review.  In Taisacan, the plaintiff invoked
the federal jurisdiction of the District Court, inducing the
Ninth Circuit to follow the Frothingham analysis.  The court
concluded that "the Supreme Court has emphatically closed the
federal courthouse door to those who wish to air their generalized
grievances in a judicial forum.  A personal stake in the outcome
is an essential dimension of the Article III 'case or controversy'
requirement.  (Emphasis added) 660 F.2d at 414.  While Taisacan
and Reynolds establish inconsistent standards where federal
jurisdiction is invoked, that issue is not now before us.  We are
concerned in this appeal only with standing in the local courts.

The Commonwealth Trial Court, in its decision, has stated its preference to adopt the <u>Reynolds</u> analysis in the Commonwealth. This question is one of local concern and the decision of the local court should be affirmed unless no tenable theory can support the conclusion. <u>Island Equipment</u>, <u>supra</u>, at 754-755. The decision has the weight of authority behind it and we see no reason not to support it.[2]

- - - - - - - - - -

[2] We add here a comment on the issue of standing in Commonwealth courts. The trial court adopted the pecuniary interest analysis. While this test is well supported, we believe it is not flawless. The analysis is strained and bases standing solely on the degree of the plaintiff's pecuniary interest (a difficult line to draw), regardless of the nature or magnitude of the wrong alleged; strict application of the test will produce illogical and often inconsistent results. See e.g. <u>Everson v. Board of Education</u>, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1946)(standing exists to assert First Amendment challenge to free transportation of parochial students) and <u>Doremus v. Board of Education</u>, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952)(no standing to assert First Amendment challenge to Bible reading in public schools since no expenditure involved). See also Annotation: <u>Taxpayer's Standing to Raise Constitutional Question in Federal Court-Federal Cases</u>. 96 L.Ed 481 (1951). For an excellent review of the issue and the problems inherent in the pecuniary interest analysis, see Jaffe, "Standing to Serve Judicial Review: Public Actions," 74 <u>Harvard Law Review</u>, 1265 (1961).

We add one further note. The <u>Frothingham</u> analysis is based on the "case or controversy" language of the United States Constitution. As noted in the text of this opinion, this language has been interpreted to require a showing of a direct personal harm; in public actions, such harm means pecuniary injury. The CNMI Constitution (Article IV, § 2) and the enabling statute of the Commonwealth Trial Court (Public Laws 1-5 and 3-14) do not copy this language; rather, the Commonwealth Trial Court has original jurisdiction "over all civil and criminal matters arising under the laws of the Commonwealth of the Northern Mariana Islands." In future cases in which this issue is presented, the Trial Court may wish to alleviate some of the confusion which accompanies the "pecuniary interest" approach and adopt a more logical and pragmatic approach to this important and recurring issue.

827

The next issue presented is whether the trial court properly directed the repayment of the unlawfully expended public funds. The trial court properly rejected the appellees' contention that § 9(e)(1) of Public Law 1-9 applies to this employment situation. That statute authorizes the restraining and the recovery of the salaries paid in violation of the civil service system. The governmental employment in this case is clearly beyond the intended coverage of the civil service act. We do, however, find that the trial court's decision to require the repayment of illegally paid salaries to be in keeping with the course set by the Legislature in the passage of that section. We adopt the reasoning of the trial court when it held:

> It would appear incongrous, indeed ludicrous, if the Court can enjoin the illegal payment of public funds but can do nothing about the recovery of monies already paid out. None of the authorities cited by defendants convince this Court that it is without power to order the illegal payments recovered back into the public treasury. (Partial Summary Judgment, p.5)

Equitable consideration aside, we hold that the better rule for this jurisdiction is that adopted by the trial court. Ultimate liability between the parties is not necessarily finally resolved by this ruling and that takes us to the next issue raised by appellants.

///
///
///

## THIRD-PARTY COMPLAINT

It is well established that trial courts exercise broad discretion in determining whether or not to allow the filing of a third-party complaint. 6 Wright and Miller, Federal Practice and Procedure §§ 1441 et. seq. In at least one federal jurisdiction a local rule extends the 10-day filing period, as a matter of right, to as long as six months, Delco Wire v. Keystone Roofing Co. 80 F.R.D. 428 (1978), but beyond that period the defendant in the original action must demonstrate proper grounds to be granted leave to implead a third-party. In the present case the motion for this relief was made nearly 18 months after the filing of the action and, perhaps more crucial, more than three months after the partial summary judgment.

In the exercise of the court's discretion it must determine the propriety of granting the motion by balancing the potential prejudice to the plaintiff in delaying the resolution of the issues presented, against the undesirability of not reducing the time and cost of further litigation in the resolution of issues stemming from the same fact situation.

Considering the time lapses above and that the record does not contain the order denying or the motion requesting, leave to file a third-party complaint, as required by Rule 6(a) of the Rules of Appellate Procedure, this court is reluctant to substitute its judgment for that of the trial court. It appears from all that has been presented to us that the trial court acted properly within its discretion.

AFFIRMED.

DATED this 22nd day of September, 1983.

_____
ALFRED LAURETA
District Judge

_____
EARL B. GILLIAM
District Judge

_____
HERBERT D. SOLL
Associate Judge