**Decided May 16, 1984**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

JOSEPH HILL, ) CIVIL ACTION NO. 82-C007
 )
 Plaintiff, )
 )
 vs. ) DECISION
 )
THE GOVERNMENT OF THE )
COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS, et al. )
 )
 Defendants. )
_____ )

I.

The facts giving rise to plaintiff Joseph Hill's claim were set forth in the Court's Decision of February 21, 1984 (Hill v. CNMI, et al., Civil No. 82-0007 (D.N.M.I. Decision filed Feb. 21, 1984)); the operative facts are restated here.

Hill was employed by the Commonwealth of the Northern Mariana Islands (hereinafter referred to as "Commonwealth" or "CNMI") from December 3, 1979 through March 3, 1980 as an Assistant Attorney General.[1] Hill's contract was renewed in March

- - - - - - - - - -

[1] Contract No. A GNMI 105-80, Exhibit A to Commonwealth's motion for summary judgment.

983

of 1980 to run through March 3, 1981.[2/] This contract provided for "travel and moving costs for employee and dependents from Saipan to Alaska" upon termination. In the early part of 1981, another contract was drafted purporting to reemploy Hill from March 4, 1981 through March 3, 1982.[3/] This contract was "disapproved" by the Governor on May 4, 1981 and asserted by the Commonwealth to be of no force and effect. Hill allegedly continued in his capacity as Assistant Attorney General until June 23, 1981. On June 26, 1981, Hill signed an employment contract with the Economic Development Loan Fund (EDLF)[4/]; the contract period was commenced, retroactively, from March 3, 1981 and ended March 3, 1982.

Hill filed this action in February of 1982, naming as defendants the CNMI, Carlos S. Camacho, individually and as Governor, Richard I. Lassman, individually and as Attorney General (hereinafter collectively referred to as "Commonwealth defendants") and Herman Q. Guerrero, individually and as Chief Administrative Officer. By his complaint, Hill sought: 1) damages against the Commonwealth for failure to pay repatriation benefits under Contract No. A GNMI 105-80 (Amendment 1);

— — — — — — — — —

[2/] Contract No. A GNMI 105-80 (Amendment 1), Exhibit A to Hill's Complaint.

[3/] Contract No. PS-110248, Exhibit B to Hill's Complaint.

[4/] Contract No. PS-110287, Exhibit F to Commonwealth's motion for summary judgment.

984

2) damages against the Commonwealth and Lassman for breach of contract in failing to perform promises allegedly set forth in writing in Contract No. PS-110248; 3) damages against the individual defendants for civil rights violations and for interference with prospective contract relations arising out of the failure to honor Contract No. PS-110248; 4) damages for defamatory statements made by Guerrero in a press interview regarding the decision not to reemploy Hill; and 5) damages against Lassman for breach of oral promises made regarding Contract No. PS-110248.

On February 21, 1984, on motion by Guerrero, the Court granted summary judgment in favor of Guerrero on the defamation claim finding Guerrero, as Chief Administrative Officer (CAO), absolutely privileged in the publication of his statement to the press. The Court, however, held that Guerrero could claim only a qualified immunity as to the interference with contract claim; Guerrero's motion for summary judgment against Hill on the immunity defense was denied. Also, the Court granted summary judgment against Hill as to the deprivation of liberty without due process allegation; the motion as to the deprivation of property without due process claim was denied.

On April 2, 1984, the Commonwealth defendants and Guerrero moved again for summary judgment. Before the Court are: 1) Guerrero's renewed motion for summary judgment on the civil rights and interference with contract claims; and 2) the Commonwealth defendants' motion for summary judgment on all claims.

///

## II.

Summary judgment is appropriate only if it is demonstrated that there exists no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law. U.S. v. First National Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981). The Court must construe the pleadings, other record evidence and its attendant inferences most favorably to the party opposing the motion. Harlow v. Fitzgerald, 457 U.S. 800, 816, n.26, 102 S.Ct. 2727, 2737, n.26, 73 L.Ed.2d 396, 409 n.26 (1982). A genuine factual issue may exist only if a viable legal theory would entitle plaintiffs to judgment if they prove their asserted version of the facts. Ron Tonkin Gran Turismo v. Fiat Distributors, 637 F.2d 1376, 1381 (9th Cir. 1981), cert.denied, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

## III.

### Validity of Contract No. PS-110248.

A point of major contention between the parties, and a primary issue in this motion, is the validity of Contract No. PS-110248. The signature of Hill, the Attorney General and the Planning and Budget Affairs Officer (PBAO) appear on the face of the contract. Absent is the signature of the Personnel Officer.[5] At the bottom of page one appear the words "I Am Dis-

---

[5] There is some confusion as to whether the Finance Officer has signed the contract; however, the absence or presence of that signature is not relevant to the resolution of this issue.

approving this Contract" followed by the signature of then Governor Camacho and dated May 4, 1981.

Hill argues the contract is complete, valid and enforceable. This contention can be summarized as follows. Under Public Law 1-8,[6/] the Office of the Attorney General is created and vested in the Attorney General is the authority to "employ staff... as required to assist in perfoming the duties of the Attorney General, subject to budgetary appropriation." Hill reads this section as vesting in the Attorney General complete authority over the hiring and employment of staff, subject only to budgetary authorization. Accordingly, a valid employment contract need only have the approval of the employee, the Attorney General and the PBAO. Since all three signatures appear on the contract, Hill argues, the contract is binding on the Commonwealth.

Guerrero and the Commonwealth defendants contend, however, that the Attorney General cannot alone bind the CNMI on an employment contract. While they concede that the Attorney General is given deference in the selection of office staff, the authority to contract is vested in the Governor's office. The defendants support this argument with a series of executive memoranda evidencing the retention of contract authority within the Governor's office.

— — — — — — — — —

[6/]Public Law 1-8 has been codified into the Commonwealth Code and appears at 1 CMC § 2001 et. seq., as amended.

In the analysis of contracts to which the government is a party, it is the applicable rules and regulations which determine and define the point at which a contract is enforceable. National Treasury Employees Union v. Reagan, 663 F.2d 239 (D.C. Cir. 1981). The Court here is posed with an absence of clear and specific laws regarding executive branch hiring. Public Law 1-9[7] established the Civil Service Commission and vested in it the authority to promulgate regulations for a comprehensive personnel employment program. The Commission in fact established the mandated regulations. However, in June 1980, the Commonwealth Trial Court declared the legislation creating the Commission unconstitutional; the regulations, however, were upheld. On appeal to the District Court, the trial court was affirmed as to unconstitutionality of the Commission; however, the panel found the regulations invalid. The Ninth Circuit affirmed the decision of the appellate panel. Camacho v. Civil Service Commission, 666 F.2d 1257 (9th Cir. 1982).[8] Thus, in May of 1981, there were no valid regulations defining the employment procedures for executive branch personnel.

— — — — — — — —

[7] Codified as 1 CMC § 8101 et. seq., as amended.

[8] The law creating the Commission provided that six of the seven members were to be appointed by the heads of the two houses; the seventh was to be appointed by the governor. This degree of control exercised by the Legislature over the personnel of the executive branch was determined to violate the principles of separation of powers. The regulations were struck down because they were not promulgated in accordance with existing procedural requisites. Camacho v. Civil Service Commission, 666 F.2d 1257, 1263-1267 (9th Cir. 1982).

■ . Hill contends that the existence or non-existence of valid regulations under P.L. 1-9 is irrelevant as P.L. 1-8 gave the department heads the sole authority to contract for staff personnel. While the language of P.L. 1-8 is ambiguous and, standing alone, lends itself to the interpretation Hill has given it, any ambiguity is resolved by an examination of P.L. 1-9. Passed on the same day as P.L. 1-8, P.L. 1-9 was intended to establish a comprehensive personnel management system to govern the employment, compensation and discharge of government employees. In light of this clear legislative intent to establish a service wide personnel management system, Hill's reading of P.L. 1-8 is not plausible. Rather, reading the two laws together, the Court is of the opinion that the delegation of the power to "employ staff" allows the department heads the discretion to determine the size and composition of their staff and gives them some authority over the selection of personnel. However, it is clear that the authority and duty to direct the logistics of actual employment of government personnel was vested elsewhere.

The Court, then, is left to determine what, if any procedures existed in May of 1981 as to the employment of executive branch personnel.

///
///
///
///

In the absence of a constitutionally composed Civil Service Commission, the executive branch personnel are under the supervision of the Governor.[9/] In July of ·1980, Governor Camacho, in response to the trial court's decision declaring the Civil Service Commission unconstitutional, enacted Executive Order No. 18 creating an Office of Personnel under the CAO. The powers and duties of the Personnel Director under P.L. 1-9 were transferred to the new Personnel Director under Executive Order No. 18. However, the executive order itself is not specific as to personnel procedures and there is no evidence either in the record or in the ·Commonwealth Register that the new Personnel Director promulgated regulations regarding the personnel system, notwithstanding his ability to do so.

What remains are two memoranda issued out of the Governor's office in February of 1980. On February 7, 1980, the Acting Governor issued a memorandum to "All Department and Activity Heads" regarding the employment of contract personnel.[10/] The memo directed that "all personal services

_ _ _ _ _ _ _ _ _ _

[9/] A non-partisan and independent civil service commission with the duty to establish and administer personnel policies is to be provided for by the legislature under Art. III, Section 16 of the Commonwealth Constitution. Section 14 of the same Article provides that each principal department shall be under the supervision of the governor. P.L. 1-8 designated the Attorney· General's office as a principal department. Accordingly, the Court looks to directives of the Governor for illumination of personnel policies.

[10/] Exhibit E to Commonwealth's motion for summary judgment.

contracts for employment purposes in the Executive Branch must secure approval of the Governor's Office." Concluding, the memo stated that failure to obtain "advance Governor's approval will invalidate the contract." On February 15, 1980, the Governor confirmed and enacted the proposal of the Office of the Attorney General to the effect that no personal services contracts should be processed without clearance from the CAO, the PBAO and the Attorney General.[11] Thus, it is the belief of this Court that in the absence of valid personnel regulations, the Governor exercises authority over personnel matters within the executive departments. In execution of this authority, the Governor established enforceable guidelines by which personnel contracts were to be created; those guidelines required the approval of the Governor's office. Accordingly, the Court finds that the Governor had the valid authority to disapprove a contract in May of 1980. That he did so with respect to Contract No. PS-110248 is not contested. Therefore, the Court finds that Contract No. PS-110248 does not represent a valid and binding agreement between Hill and the Commonwealth. The Government's motion for

— — — — — — — — —

[11] Exhibit D to Commonwealth's motion for summary judgment. The memo from the Attorney General proposed this procedure in light of the position of the Executive Branch that the Civil Service Regulations promulgated under P.L. 1-9 were invalid. As such, the memo is the strongest statement in the record as to the procedure to be followed in the absence of valid civil service regulations.

summary judgment as to the existence of an express contract is granted.[12/]

The finding of no express contract also makes the due process claim ripe for summary disposition. As noted in the previous decision on summary judgment, the guarantees of due process (notice and an opportunity to be heard) only attach if Hill can show the deprivation of a constitutionally protected property interest. Hill v. CNMI, supra, p. 1, at pp. 17-18. Hill must demonstrate a "legitimate claim of entitlement" to the contract and not merely a "unilateral expectation" of it. Roth v. Board of Regents, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). Since the Court finds that Hill's contract was never finalized, he can no longer argue that he had anything more than a mere expectation of a contract through March 1982. Thus, there exists on the facts of this case no constitutionally protected property interest; accordingly, defendants' motions for summary judgment on the due process claim is granted.

Guerrero's Immunity

Guerrero renews his motion for summary judgment based on his assertion of absolute immunity. In his memorandum in support of his motion, Guerrero reviews the authorities cited in

_____

[12/] It should be noted that the Second Cause of Action of Hill's complaint also states a claim for restitution based on services performed by Hill from March 3 through June 23, 1981. This claim is not affected by the summary judgment on the express contract issue.

992

the Court's prior decision denying summary judgment; in essence, he seeks reconsideration of that ruling. The Court has read and considered Guerrero's arguments; however, the Court remains convinced, for the reasons set forth in its prior decision, that a qualified immunity presents the best balance between the competing interests of protecting government officials from undue interference and that of compensating tort victims for their injuries.[13]/

 Guerrero argues that even assuming, *arguendo*, a qualified immunity applies, under the test set forth in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396,

- - - - - - - - -

[13]/ Guerrero cites Section 895D of the Restatement of Torts, 2d ("Restatement") as additional authority for his claim of absolute immunity. Section 895D reads in pertinent part:

(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

(a) he is immune because engaged in the exercise of a discretionary function...

Guerrero quotes the following language from the comment following the section in support of his assertion of absolute immunity:

Thus the existence of an "immunity" may mean that, so long as an officer acts within the general scope of his authority he is not liable, regardless of his motives and whether he tried to exercise his judgment in good faith or not. Here, all vexatious suits are avoided, since a suit against him is summarily dismissed because there is no issue regarding the exercise of his discretion to be treated by the court. This is a full immunity--a true immunity--though it is sometimes called an absolute privilege.

However, the next paragraph reads:

Guerrero is still entitled to summary judgment. As noted in the prior decision, the Supreme Court in Harlow eliminated the subjective prong of the two-prong qualified immunity test established in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This was done in an effort to protect government officials from the inconvenience of lengthy trials based on minimal allegations of bad faith. What remains is the objective test which allows summary disposition of the issue where the defendant can show that his actions were objectively reasonable; that is, the official must show that a reasonable person would not have known that the actions taken would violate clearly established rights of the plaintiff. Here, the Court finds that: 1) the rights were clearly established in that interference of prospective contractual relations is set forth in Section 766B of the Restatement; and 2) that the actions taken for the reasons alleged by Hill would have been understood by a reasonable person to violate Hill's contract rights as stated in Section 766B. Hill's allegations, of course, remain to be proved at trial. Accordingly, the Court again denies Guerrero's motion for summary judgment on the immunity issue.

_ _ _ _ _ _ _ _ _

In a second situation, the existence of the "immunity" may be treated as meaning that the officer is not liable if he made his determination and took the action that harmed the other party in good faith, in an honest effort to do what he thought the exigencies before him required.

## Remaining Matters

The CNMI moves for summary judgment on Hill's first cause of action which alleges failure to pay repatriation benefits under Contract No. A GNMI 105-80 (Amendment 1). However, material questions of fact remain as to the amount of repatriation benefits paid to Hill attributable to that contract. The motion is denied.

The Commonwealth also moves for summary judgment on Hill's fifth cause of action against Lassman for breach of oral promises made regarding Contract No. PS-110248. Again, material questions of fact remain as to the nature of the representations made by Lassman to Hill; this motion is also denied.

### IV.

In conclusion, the motions for summary judgment are decided as follows:

a) Defendants' motions as to the non-existence of an express contract commencing March 3, 1981 (contract no. PS-110248) is granted;

---

In subsection "f", the comment clarifies that "the court must weigh numerous factors and make a measured decision... whether the officer... should be entitled to a full or limited immunity." The Court has balanced the many considerations involved and has concluded that the officers of the Commonwealth are adequately protected against unreasonable interference by a qualified immunity.

b) Defendants' motions regarding the due process claim is granted;

c) Guerrero's motion regarding the inter- ference of contract claim is denied;

d) CNMI's motion as to repatriation benefits is denied; and

e) CNMI's motion as to the claim against Lassman is denied.

May 16, 1984
_____
Date

_____
JUDGE ALFRED LAURETA