Diana C. FERREIRA, Plaintiff–Appellant,

v.

Rosalia Mafnas BORJA; Isidora Mafnas Salas; Feliza M. Babauta; Carmen M. Guerrero; William M. Borja; Jose M. Borja; Juan M. Borja; Luna M. Borja; Patricia B. Robert, Defendants–Appellees.

No. 92–15523.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1992.

Decided Aug. 19, 1993.

Donn Dimichele, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Los Angeles, CA, for plaintiff-appellant.

Theodore Mitchell, Saipan, CM, for defendants-appellees.

Before: NORRIS, BEEZER, and KLEINFELD, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Diana Ferreira sued to quiet title in three parcels of land in the Commonwealth of the Northern Mariana Islands ("CNMI") which she had purchased from the Borja family. Ferreira is a person of Northern Marianas descent who obtained financing for the land from persons not of Northern Marianas descent. In return for the financing, she entered into a partnership agreement with these persons in which she agreed to lease the land to the partnership for 40 years.[1]

Article XII of the CNMI Constitution restricts ownership of Commonwealth land to persons of Northern Marianas descent.[2] At the time Ferreira entered into the agreement, Article XII permitted persons not of Northern Marianas descent to hold leases of up to 40 years. It has since been amended to allow leases of up to 55 years. CNMI Const. art. XII, § 3.

The Borjas contested her claim to title, arguing that their sale of the land to her was void because it violated Article XII by giving a permanent interest in CNMI land to persons not of Northern Marianas descent.

The CNMI Superior Court granted summary judgment in favor of the Borjas, holding that the land sale violated Article XII because Ferreira had bought the land as an agent for persons not of Northern Marianas descent.

On appeal, the CNMI Supreme Court affirmed, but on different grounds. Applying the common law "resulting trust" doctrine, the CNMI Supreme Court ruled that Ferreira held the land in trust for her non-Northern Marianas partners, who the Court said were the true owners. Because Article XII of the CNMI Constitution prohibits ownership of CNMI land by persons not of CNMI descent, the Court voided the sale and gave the land back to its original owners, the Borjas.

Ferreira contends that the CNMI Supreme Court's decision stripping her of title to the land violated both the equal protection and due process clauses of the Fourteenth Amendment. She argues that the Court's action discriminated against her on the impermissible ground that she received financing from persons not of Northern Marianas descent, and that the decision effected a taking of her property without due process of

---

1. In the partnership agreement, she also agreed to (1) convey the land to the partnership if the law was changed to permit her to do so; (2) purchase any improvements on the land at the end of the lease; and (3) convey the land to a person of Northern Marianas descent if she withdrew from the partnership.

2. Article XII provides:

> The acquisition of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of Northern Marianas descent.

CNMI Const. art. XII, § 1.

law. The Borjas respond that the Court's action did not discriminate against her or deny her due process, but only carried out the mandate of Article XII of the CNMI Constitution by prohibiting the acquisition of permanent interests in CNMI land by persons not of CNMI descent. Ferreira counters that the transaction fully complied with Article XII, but was transformed into one that did not by a gross misapplication of the resulting trust doctrine by the CNMI Supreme Court. In other words, she claims that the Court engaged in a legal sleight-of-hand to take the land away from her and return it to the Borjas.

■ The Borjas claim that we cannot review the CNMI Supreme Court's application of the common law resulting trust doctrine because even "if the Court's analysis is incorrect in any way, it is solely and completely a matter of Commonwealth law." Appellees' Br. at 34. The Borjas are, of course, correct that the CNMI Supreme Court is the "ultimate expositor" of local Northern Marianas law. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied* 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989). However, we may examine the CNMI court's interpretation of CNMI law if that interpretation is "'untenable or amounts to a subterfuge to avoid federal review of a constitutional violation.'" *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir.1990) (quoting *Oxborrow*, 877 F.2d at 1399); *see also Brodheim v. Rowland*, 993 F.2d 716, 717 (9th Cir.1993).

In a cogent dissent, Special Judge Edward King agreed with Ferreira that the resulting trust doctrine had no applicability here. Judge King said that the majority had "ignore[d] or modif[ied] key aspects of the doc-

trine," "transmogrif[ying]" the doctrine into something wholly unfamiliar. *Ferreira v. Borja*, No. 90–047, 1992 WL 62894, at *8 (CNMI Sup.Ct. Feb. 18, 1992) (King, S.J., dissenting). Instead of the "resulting trust" approach, Judge King argued that the proper test for whether a particular land sale violates Article XII is whether it gives an excessively long-term interest in the land to a non-Northern Marianas person. Judge King said that courts should "scrutinize carefully any transaction entered into by a non-[Northern Marianas] person to determine whether the transaction would result in acquisition of a long term interest by a non-[Northern Marianas] person, or in having the land pass out of the hands of the people of the [CNMI]." *Id.* at *13.[3]

■ We agree with Judge King that the CNMI Supreme Court's application of the resulting trust theory was untenable. A resulting trust is a "[t]rust implied in law from intentions of parties to a given transaction." *Black's Law Dictionary* 1315 (6th ed. 1990). The purpose of the resulting trust doctrine is to protect persons who are the rightful owners of land even though they do not have legal title. Courts have refused to find a resulting trust in favor of a person who purchased land under another's name if that person did so "in order to accomplish an illegal purpose." 2 *Restatement (Second) of Trusts* § 444 (1959); George G. Bogert & George T. Bogert, *Law of Trusts* 268 (5th ed. 1973).[4] Here, even if Ferreira and her partners did intend to create a resulting trust in favor of partners not of CNMI descent (a questionable proposition in its own right),

---

**3.** Judge King disagreed with the majority not only on the application of the resulting trust doctrine, but also on the appropriate remedy for an Article XII violation. Instead of voiding the entire land deal and handing the land back to a seller as the majority did, Judge King would have invalidated that portion of the deal which gave persons not of Northern Marianas descent a long term interest in the land. Under Judge King's approach, Ferreira's claim to the land would thus be quieted, but any interests of non-Northern Marianas persons beyond the maximum 55-year lease would be voided.

**4.** A leading treatise observes:

> Where the purchase is made for the purpose of defrauding the government, it has been held that a resulting trust will not be enforced. Thus it is held that where *A*, who is not entitled to acquire government land, pays the purchase price and takes title in the name of *B*, who is entitled to acquire such land, the transaction is a fraud on the government.... [*A's*] illegal conduct precludes him from enforcing a resulting trust.

Austin Wakeman Scott & William Franklin Fratcher, V *The Law of Trusts* § 444 at 201 (4th ed. 1989) (footnotes omitted).

their actions would not have created a resulting trust because the transaction would have had an illegal purpose—avoidance of the land alienation restrictions of Article XII.[5]

It would be incongruous to use a court's equitable powers to create a resulting trust in favor of someone and then use the existence of the resulting trust as a basis for finding that that person has violated the law. Yet this is exactly what the CNMI Supreme Court has done. It held that a resulting trust was created in favor of the persons not of Northern Marianas descent who provided the financing for Ferreira's purchase of the property, and then used that judicially-created resulting trust as a basis for voiding the sale and giving the land back to the Borjas.[6]

The Commonwealth cannot constitutionally deprive a person of a property interest through the expedient of an untenable judicial interpretation of local law that denies that a property interest ever existed. *See Cherry v. Steiner*, 716 F.2d 687, 692 (9th Cir.1983), *cert. denied* 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 190 (1984) ("[A] state cannot validly effect a taking of property by the simple expedient of holding that the property right never existed."). We thus vacate the judgment of the CNMI Supreme Court. We will refrain from deciding the merits of Ferreira's Fourteenth Amendment claims until the CNMI Supreme Court has had an opportunity to reconsider its interpretation of resulting trust law in light of this opinion.

VACATED and REMANDED for further proceedings consistent with this opinion.

---

**5.** The *Restatement* provides one exception to its rule that courts will not find a resulting trust in favor of someone who purchased land under another's name in order to accomplish an illegal purpose. The Restatement says that the general rule does not apply in cases where it would be more unjust to leave the land in the hands of the person who did not pay for it, than to award it (via a resulting trust) to the person who paid for it, but sought to accomplish an illegal purpose. The Restatement of the Law of Trusts sets forth the following rule:

> Where a transfer of property is made to one person and another pays the purchase price in order to accomplish an illegal purpose, a resulting trust does not arise if the policy against unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction.

*Restatement (Second) of Trusts* § 444 (1959). That exception does not apply here. The CNMI Supreme Court did not decide that the equities of the case justified awarding the land to Ferreira's financiers rather than to Ferreira herself. This is clear because the Court awarded the land to neither Ferreira nor her financiers, but, rather, to the land's original owners, the Borjas.

**6.** The CNMI Supreme Court attempts to evade the illegal purpose restriction to the creation of resulting trusts by saying that "a violation of Article XII does not occur until and unless a court declares a transaction to be violative of Article XII." *Ferreira*, No. 90–047, 1992 WL 62894, at *7. Thus, the resulting trust did not have an illegal purpose at the time of its creation. We agree with Judge King that this is a "legal fiction[]." *Id.* at *10 (King, S.J., dissenting).