**COMMONWEALTH OF the NORTHERN MARIANA ISLANDS, Plaintiff–Appellee,**

**v.**

**Isidro R. LIZAMA, Defendant–Appellant.**

**No. 93–10469.**

United States Court of Appeals, Ninth Circuit.

Submitted May 9, 1994.\*

Decided June 22, 1994.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

G. Anthony Long, Saipan, MP, for defendant-appellant.

Cheryl M. Gill, Asst. Atty. Gen., Capitol Hill, Saipan, CM, for plaintiff-appellee.

Before FARRIS, BEEZER and RYMER, Circuit Judges.

Opinion by Judge RYMER.

RYMER, Circuit Judge:

This appeal turns on the construction and interpretation of local law by the Supreme Court of the Commonwealth of the Northern Mariana Islands (CNMI). We must decide whether the CNMI Supreme Court violated Isidro Lizama's due process rights by upholding Regulation 8301, a CNMI Revenue and Taxation Regulation giving customs officials the authority to conduct airport searches.[1] Our review is limited to determining whether the CNMI Supreme Court's ruling was arbitrary, discriminatory, "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Ferreira v. Borja*, 1 F.3d 960, 962 (9th Cir. 1993) (quotation marks omitted). We have jurisdiction, 48 U.S.C. § 1694c(a), and we affirm.

I

On June 15, 1991, Lizama arrived at the Saipan airport on a direct flight from the Philippines, carrying a statue that appeared to be freshly painted. A customs officer, later joined by another, ran the statue through an airline's baggage x-ray machine, drilled several holes in the statue, and eventually cut through the statue's base and pried it open with a crowbar. The two officers discovered three bags of crystal methamphetamine inside the statue. Lizama was arrested and charged with importing and trafficking in methamphetamine in violation of 6 CMC § 2301(a), and possession of a controlled substance, *id.* § 2141(a)(1).

Lizama moved in the superior court to suppress the drugs found in the statue. Because another CNMI court had previously determined that warrantless searches by cus-

toms officers at the borders of any of the Northern Mariana Islands were reasonable under Article I, § 3 of the Commonwealth Constitution (which tracks the Fourth Amendment of the United States Constitution), Lizama took the tack that Regulation 8301, authorizing customs officers to inspect baggage, parcels, cargo, and passengers arriving in the Commonwealth, was invalid because it was not promulgated in accordance with applicable local law.

The Administrative Procedure Act of the Trust Territory of the Pacific Islands (TT APA), which sets forth the procedural steps necessary to promulgate and adopt a rule or regulation, took effect on July 1, 1974. At that time, the Northern Mariana Islands were part of the Trust Territory. In 1978, the Northern Marianas became a self-governing commonwealth in political union with the United States. *See generally Commonwealth v. Atalig*, 723 F.2d 682, 684–85 (9th Cir.), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3518, 82 L.Ed.2d 826 (1984). The TT APA (along with other provisions of the TT Code) remained "in force and effect" in the CNMI "until and unless altered by" its government. Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America § 505, Pub.L. No. 94–241, 90 Stat. 263 (1976), *reprinted in* 48 U.S.C. § 1681 note (1988).

The CNMI Department of Finance initially promulgated Regulation 8301 as an "emergency regulation" pursuant to TT APA § 4(2).[2] After notice and comment, the Regulation was formally adopted on March 31, 1983, filed with the CNMI Corporate Registrar, and published in the Commonwealth Register; the Regulation was not filed with the Governor or the Trust Territory District Administrators, and it was not published in the Territorial Register.

When Regulation 8301 was adopted, the TT APA was still in effect. The Common-

---

1. Regulation 8301 provides as follows:

   *Inspection of Baggage.* The customs agent may inspect without warrant the baggage and hand carried parcels of any person arriving in the Northern Marianas in order to ascertain what articles are contained therein and whether taxable, prohibited, or restricted.

2. Both the TT APA and the CMC state that an emergency regulation "may be effective for a period of not longer than 120 days[.]" 17 TTC § 4(2); 1 CMC § 9104(b). An identical regulation may thereafter be promulgated in accordance with the notice requirements of § 4(1) or § 9104(a).

wealth Code (CMC), including its Administrative Procedure Act (CMC APA), became effective on January 1, 1984. Regulation 8301 was not republished in the Commonwealth Register nor was it thereafter filed with the Governor and Corporate Registrar.

The superior court agreed with Lizama that Regulation 8301 was void because it had not been filed with the "district administrator" of each district in the Trust Territory as required by § 5(1) of the TT APA, or with the CNMI Governor as required by § 9105(a) of the CMC APA,[3] and because it was not refiled and republished pursuant to the requirements of § 9102(d) of the CMC APA, which provided that existing regulations had to be refiled and republished within 10 days of January 1, 1984 to remain in effect.[4] Without Regulation 8301, the superior court found that the customs officers lacked authority to conduct a warrantless search of the statue, Lizama's baggage, or his person. The court therefore held that the search was illegal and suppressed all evidence obtained as a result of the search.[5]

The CNMI Supreme Court reversed, holding that Regulation 8301 had been validly promulgated pursuant to the TT APA, and that it remained valid after enactment of the CMC. Because the Regulation was an existing law at the time the CMC was adopted, the court held that the refiling and republishing requirements of § 9102(d) were inapplicable. *Commonwealth v. Lizama*, No. 91–035, 1992 WL 515985 (N.Mar.I. Dec. 29, 1992).

Lizama filed this timely appeal, raising several arguments under the Due Process Clause.[6] He contends that the court's decision was arbitrary, departed from past interpretations of requirements that governed the transition from Trust Territory to Commonwealth, and resulted in the application of a statute that was unconstitutionally vague.

## II

### A

Lizama first argues that the CNMI Supreme Court's ruling was untenable because the Department of Finance failed to comply with the terms of § 5(1) of the TT APA, which governed in the CNMI in 1983 and which called for the filing of certified

---

3. Section 5(1) of the TT APA provides as follows:
   **§ 5. Filing and effective date of rules and regulations.—**
   (1) Each agency shall file in the office of the registrar of corporations and of each district administrator in the Trust Territory a certified copy of each rule adopted by it, including all rules existing on the effective date of this chapter. The registrar of corporations and the district administrator in each district in the Trust Territory shall keep a permanent register of the rules open to public inspection.
   17 TTC § 5(1).
   As noted, the TT APA remained in effect when the Marianas District became the CNMI in 1978. On January 1, 1984, Public Law 3–90 enacted the CMC, which contains numerous provisions taken directly (with slight modifications) from the TT Code. The TT APA was recodified at 1 CMC §§ 9101–9115. Thus, TT APA § 5(1) appears almost verbatim at 1 CMC § 9105(a); the only change is that "the Governor" is substituted for "each district director in the Trust Territory."

4. Section 9102 likewise has a direct counterpart in the TT APA, which provides as follows:
   **§ 2. Publication of rules and orders.—**
   . . . .
   (4) No regulation or other rule adopted by any agency before the date this chapter comes into effect shall remain in effect unless such regulation or other rule is filed with the registrar of corporations and with the district administrator of each district in the Trust Territory within ten days of the date this chapter comes into effect as to regulations, and within ninety days thereafter as to other rules, and is published in the territorial register in accordance with the provisions of this section. Regulations and other rules not filed within such period shall become void and subject to reinstatement only in accordance with the provisions of sections 4 and 5 of this chapter. (P.L. No. 5–86, § 2.)
   17 TTC § 2(4). Section 9102(d) calls for filing "with the Registrar of Corporations and with the Governor," rather than "with the registrar of corporations and with the district administrator of each district in the Trust Territory"; § 9102(d) also uses the term "Commonwealth Register" in place of "territorial register."

5. Both the superior court and the CNMI Supreme Court assumed that the officers' search at the border was invalid unless authorized by CNMI law. We express no opinion on this point, as it is not an issue on appeal.

6. The Due Process Clause of the Fourteenth Amendment applies in the CNMI by virtue of § 501(a) of the Covenant.

copies of regulations with each district administrator. The supreme court held that the failure to comply with § 5(1) did not render invalid a regulation otherwise properly adopted. While § 5(1) did apply at the time the Regulation was promulgated, the CNMI Supreme Court's decision about what consequences flow from noncompliance with § 5(1) is a final decision of "the ultimate expositor of local Northern Marianas law," *Ferreira*, 1 F.3d at 962 (quotation marks omitted), and we must accept it as authoritative.

Lizama contends that the supreme court's decision is contrary to *Camacho v. Civil Service Commission*, 666 F.2d 1257 (9th Cir. 1982), where we upheld a decision by the Appellate Division of the District Court of the Northern Mariana Islands striking down certain rules of the CNMI Civil Service Commission that were not noticed in compliance with § 4(1) of the TT APA. Lizama argues that the supreme court arbitrarily refused to follow *Camacho* and to invalidate Regulation 8301 on the ground that it was neither published in the Territorial Register nor posted "in convenient places in the district centers and in local government offices in each district," as § 4(1)(a) of the TT APA requires.

■ However, Lizama did not argue in the CNMI Supreme Court that the Regulation was invalid for noncompliance with § 4(1) until he moved for reconsideration of that court's ruling. Even if the supreme court might have reached a different result had the point been argued initially, the court's refusal to reconsider its opinion is not a "subterfuge," nor is it "untenable" or arbitrary. *Ferreira*, 1 F.3d at 962. We routinely refuse to consider on petitions for rehearing arguments not raised in a brief or at oral argument, *see, e.g., United States v. Lewis*, 798 F.2d 1250 (9th Cir.) (order), *amending*, 787 F.2d 1318, 1323 (9th Cir.1986), and we find no constitutional infirmity in the CNMI Supreme Court's decision to follow a similar course in these circumstances.

## B

Lizama next argues that the supreme court's conclusion that filing the Regulation with the Governor was not required to ensure its validity ignores the plain language of 1 CMC § 9105(a), and in so doing arbitrarily departs from that court's standard practice of construing statutory provisions according to their express language. Lizama relies on *Aquino v. Tinian Cockfighting Board*, No. 91–012, 1992 WL 396822 (N.Mar.I. Sept. 25, 1992), in which the CNMI Supreme Court held that the requirement of publishing an invitation to bid for a franchising license was mandatory, given the statute's "unambiguous" use of the word "shall" in introducing the publication requirement.[7] *Aquino*, 1992 WL 396822, at *3. According to Lizama, the court's adherence to a "plain meaning" rule in a case decided only three months before construing § 9105(a) as not requiring filing with the Governor (notwithstanding the appearance of the word "shall" in the statute) illustrates that the ruling in his case was arbitrary, discriminatory, and untenable.

■ Although the court in *Aquino* determined that "shall" was "unambiguous under the context of Section 2415," *id.*, it explicitly considered the purposes behind the publication requirement in reaching this conclusion. *See id.* (finding that publication "serves important public policies," including insuring fairness and generating a competitive response of bids for a scarce public resource). The supreme court in this case used the same mode of analysis: The court considered the purposes served by the filing requirement (specifically, providing notice of a regulation) and found they would not be served (and that public resources would be wasted) by requiring separate filings in offices located on the same floor of the same building. *Lizama*, 1992 WL 515985, at *5.

The CNMI Supreme Court has said that it "construe[s] a statute according to its plain-meaning [sic], where it is clear and unambig-

---

7. The statutory provision at issue in *Aquino* provides in part:

Notice of invitation to bid for the award of a franchise license to operate a cockfight shall be made publicly, with copies of the notice posted at public buildings and other conspicuous places and placed in a newspaper of general circulation in the Commonwealth, to appear in three consecutive issues.

10 CMC § 2415.

uous." *Gioda v. Saipan Stevedoring Co.*, 1 N.Mar.I. 112, 114, 1990 WL 291964 (1990). As the *Aquino* case demonstrates, however, the court has not adopted an inflexible rule of refusing to consider a statute's underlying purposes in deciding whether it is "unambiguous." In these circumstances, we decline Lizama's invitation to find a due process violation in the CNMI Supreme Court's failure to construe the statutory provisions as he would have wished the court to construe them.

## C

Lizama argued, and the superior court agreed, that the plain language of § 9102(d) required the Department of Finance to refile and republish Regulation 8301 within 10 days of the date the statute came into effect, i.e., before January 11, 1984. Lizama points out that the Regulation was promulgated on March 31, 1983, and argues that it was, consequently, a "regulation adopted by [an] agency before" the effective date of § 9102(d), which was January 1, 1984. As it is undisputed that refiling and republication of the Regulation never took place, Lizama insists that § 9102(d) voids the Regulation and that the CNMI Supreme Court's contrary interpretation deprives him of due process.

Relying on Public Law 3–90, the statute that enacted the Commonwealth Code, and on an explanatory note of the Commonwealth Law Revision Commission (which organized the TT Code for enactment as the CMC), the supreme court held that the CMC APA was not "actually and specifically enacted" on January 1, 1984, but rather was "an existing law which continued" to apply in the CNMI both before and after passage of Public Law

3–90.[8] *Lizama*, 1992 WL 515985, at *6. The court acknowledged that § 9102(d) was not identical to its TT APA counterpart, § 2(4), as the former replaced "district administrator" with "Governor" and "territorial register" with "Commonwealth Register." However, the court found that these modifications were minimal and were made only to take account of the CNMI's different names for its chief government officer and official register. Because § 9102(d) was a continuation of § 2(4), and because the effective date of § 2(4) was July 1, 1974 (well before the date the Regulation was promulgated), the supreme court concluded that § 9102(d) does not apply to the Regulation.

■ Lizama's argument that in so doing, the supreme court ignored § 11 of Public Law 3–90, which provides that "[n]o part of this Code is retroactive, unless expressly so stated," fails because the court did not conclude that § 9102(d) applied retroactively, in the sense of applying retrospectively a set of legal rules that had not previously existed. Rather, the court relied on two other provisions of Public Law 3–90: Section 8, which states that CMC provisions, "as far as they are substantially the same as existing law, shall be construed as continuations thereof and not as new enactments[,]" and § 4(a), which provides that Title 1 of the CMC (among other parts of that code taken from the TT Code) is "general and permanent in nature, and in force and effect on the first day of November, 1983." Thus, the court did not ignore § 11; it merely concluded that § 11 was inapplicable, and that §§ 4(a) and 8 controlled. There is nothing arbitrary in the supreme court's construction of the various sections of Public Law 3–90.

---

8. Section 2(a) of Public Law 3–90 enacts Titles 1–4 of the CMC without special reservation; as noted, Title 1 (the CMC APA) is in many respects identical to the TT APA. The CNMI Supreme Court relied on § 8 of Public Law 3–90, which states that "[t]he provisions of this Code, as far as they are substantially the same as existing law, shall be construed as continuations thereof and not as new enactments."

In contrast to subsection (a) of Public Law 3–90 § 2, which adopts CMC Titles 1–4 without reservation, subsections (b) & (c) of § 2 enact the other CMC titles with various modifications.

The CNMI Supreme Court found significant the following explanatory note:

As set forth in PL 3–90, those portions of the Commonwealth Code listed in Section 2(b) and 2(c) of that law have been codified as positive law. Those portions of the Code are legal evidence of the law contained therein. All other portions of the Commonwealth Code establish prima facie the general and permanent laws of the Commonwealth.

Foreword, Commonwealth Law Revision Comm'n, at ii (Jan. 1, 1984).

Lizama next argues that even if the CNMI Supreme Court properly relied on Public Law 3–90 § 4(a), that provision actually supports his argument, inasmuch as he reads § 4(a) as making November 1, 1983 the effective date of § 9102(d); if that is so, the Regulation is antecedent to § 9102(d) and would therefore appear to be subject to the statute's requirements. However, § 4(a) does not state that Title 1 of the CMC is effective *as of* November 1, 1983; it says only that the provisions of that title were "in force and effect *on*" that date. (Emphasis added.) Once again, we cannot say that the CNMI Supreme Court's construction of Public Law 3–90 is arbitrary, as that court's reading gives full effect to § 4(a) as well as § 8.

■ Lizama next argues that because the CNMI and the Trust Territory are separate and distinct political entities, it is arbitrary to construe the former's enactment of an administrative procedure statute as a continuation of the latter's law. This cannot be so in light of § 8. Lizama does not suggest that the drafters of Public Law 3–90 were without authority to decide that certain provisions of Trust Territory law should continue to apply in the Commonwealth. As the CNMI legislature exercised that authority with respect to the TT APA, the supreme court did not act arbitrarily in giving effect to that legislative choice.

■ Finally, Lizama argues that the CNMI Supreme Court recognized that 1 CMC § 9102(d) is not "substantially the same as" its TT APA counterpart, § 2(4), and that § 8 is therefore inapplicable. The court held that the drafters of Public Law 3–90 had to make certain modifications to § 2(4) to make it effective in the CNMI, but that the differences were minimal and only took account of the different names of public officers and official registers. *Lizama*, 1992 WL 515985, at *6. We find nothing arbitrary or untenable in the supreme court's reasoning.

### III

■ Lizama argues that the CNMI Supreme Court's ruling was so unforeseeable a departure from its prior methods of statutory construction as to violate the principles of "fair warning" that the Due Process Clause safeguards. *See Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977). We disagree. The CNMI Supreme Court's decision in this case did not declare illegal any conduct which that court (or any other) had previously declared legal. The court was concerned exclusively with the validity of a regulation authorizing a search that uncovered evidence used to prosecute Lizama. The ex post facto concerns that underlie the Due Process Clause are not implicated by the CNMI Supreme Court's ruling. *See United States v. Ruiz*, 935 F.2d 1033, 1036 (9th Cir.1991) (no due process violation where defendant entered plea agreement based on Ninth Circuit decision withdrawn three days before sentencing; withdrawal of opinion had effect of increasing defendant's sentence, but did not result in defendant's conviction for additional crime).

### IV

■ Lizama also argues that the CMC APA, as applied in this case, is unconstitutionally vague. We do not agree. As construed by the CNMI Supreme Court in this case, Title 1 of the CMC does not "impermissibly delegate[ ] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). The court held only that the Regulation, which itself serves to guide and constrain the actions of CNMI law enforcement officials, is valid under the CNMI administrative procedure statutes.

**AFFIRMED.**