Teresita Camacho **Dela Cruz** and
Estefania Camacho Chong,
Plaintiffs/Appellants,

**v.**

**Hotel Nikko Saipan, Inc.,**
Japan Airlines, Inc., Blanco Vende, Ltd.,
Realty Trust Corp., and
Edward Flores Camacho,
Defendants/Appellees.
Appeal No. 95-031
Civil Action No. 91-0259
September 22, 1997

Argued and Submitted June 25, 1997

Counsel for Appellants: Theodore R. Mitchell, and Jeanne H. Rayphand, Saipan.

Counsel for Appellees: John F. Biehl, and James M. Polish, Saipan. (Carlsmith, Ball, Wichman, Case & Ichiki)

BEFORE: TAYLOR, Chief Justice, LAMORENA and MACK, Special Judges.

TAYLOR, Chief Justice:

¶1 ■ Appellants, Teresita Camacho Dela Cruz ("Teresita") and Estefania Camacho Chong ("Estefania") appeal the Superior Court's September 6, 1995, Order denying their motion for summary judgment on their quiet title claim and granting summary judgment in favor of the defendants: Hotel Nikko Saipan, Inc. ("Hotel Nikko"), Japan Airlines, Inc. ("JAL"), Blanco Vende, Ltd. ("Blanco Vende"), and Realty Trust Corp. ("Realty Trust"). We have jurisdiction pursuant to 1 CMC § 3102. We affirm.

## ISSUES PRESENTED AND STANDARD OF REVIEW

¶2 The issues presented are as follows:

I. Whether the Superior Court erred in denying plaintiffs' motion for summary judgment and holding that plaintiffs are not entitled to prevail as a matter of law on an agency-trust theory.

II. Whether the Superior Court erred in denying plaintiffs' motion to disqualify the Carlsmith, Ball, Wichman, Case & Ichiki ("Carlsmith") law firm.

III. Whether the Superior Court erred in not examining the constitutionality of Public Law ("PL") 8-32.[1]

¶3 ▮ We review de novo an order granting summary judgment. *Apatang v. Marianas Pub. Land Corp.*, 1 N.M.I. 140, 146 (1990). Summary judgment motions will be affirmed if we determine that, as to the legal basis relied upon: (1) there was no genuine issue of material fact, and (2) the Superior Court correctly applied the substantive law. *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993). We may also affirm if we find the result is correct under a different theory. *Id.* In our de novo review of a summary judgment motion, we view the evidence and inferences to be drawn in favor of the non-moving party. *Id.*

¶4 ▮ We review a denial of a motion to disqualify counsel under the abuse of discretion standard. *Commonwealth v. Oden*, 3 N.M.I. 186, 191 (1992). We review a challenge to the constitutionality of a statute de novo. *Office of the Attorney General v. Deala*, 3 N.M.I. 110, 114-15 (1992).

## FACTS AND PROCEDURAL BACKGROUND

### I. The Transactions

¶5 On August 1, 1983, Teresita and Estefania, persons of Northern Marianas descent ("NMD"), sold a parcel of property in San Roque/Matansa, Saipan, identified as Lot Number 006 B 03 consisting of 3,183 square meters, to two corporations: Realty Trust and Blanco Vende. On the same day, Realty Trust conveyed its interest in the property to Blanco Vende. Blanco Vende remains the record owner of the property. The purchase price of the property was paid by Japan Air Lines Development Co. ("JDC"), which secured the debt through a mortgage on the property. Blanco Vende paid off the JDC loan in 1988 and the mortgage was released. Blanco Vende subsequently leased the property to Hotel Nikko, which constructed a luxury hotel. *Dela Cruz v. Hotel Nikko*, Civ. No. 91-0259 (N.M.I. Super. Ct. May 2, 1995) (Memorandum Decision and Order on Defendants' Motion for Summary Judgment at 2).

### II. The Corporations

¶6 Realty Trust was incorporated in the Commonwealth on July 30, 1981. According to the articles of incorporation, the corporation issued one thousand shares of stock, subscribed to by the following individuals: Bernie S. Cabrera (260 shares), a NMD; Josefa K. Flores (250 shares), a NMD; Roger Gridley (250 shares), a non-NMD; and First Commonwealth Corp. (240 shares), a non-NMD. Realty Trust had its principal place of business in the Commonwealth. *Id.*

¶7 Blanco Vende was incorporated in the Commonwealth on July 8, 1983. Its articles of incorporation list one thousand shares of stock outstanding, subscribed to by the following persons: Riichi Yamamoto (490 shares), a non-NMD; Rita H. Sablan (255 shares), a NMD; and Bernie S. Cabrera (255 shares), a NMD. Mr. Yamamoto held his stock for JDC, the entity which furnished the purchase price of the stock. According to the amended articles of incorporation, any transfer of real property owned by the corporation had to be approved by 75% of the voting shares. Blanco Vende had its principal place of business in the Commonwealth. *Id.* at 2-3.

### III. The Motion to Disqualify the Carlsmith law firm

¶8 The plaintiffs filed a motion to disqualify the Carlsmith law firm from the defendants based on assertions that representing multiple clients with potentially adverse interests created an impermissible conflict of interest. This motion was subsequently denied. *Tudela v. Layne*, Civ. No. 88-0715 (N.M.I. Super. Ct. July 15, 1993) (Order Denying Motion to Disqualify Carlsmith at 3).

### IV. The Summary Judgment Motion

¶9 On September 6, 1995, the Superior Court denied plaintiffs' motion for summary judgment and entered judgment in favor of the defendants. *Dela Cruz*, (N.M.I. Super. Ct. Sept. 6, 1995) (Order on Plaintiffs' Motion for Summary Judgment at 1); *Dela Cruz*, (Judgment at 1). Appellants timely appealed.

## ANALYSIS

### I. The Superior Court did not err when it granted

---

[1] The sub-issues are: (1) Whether P.L. 8-32 forecloses this action to set aside the corporate entity of Realty Trust and Blanco Vende; (2) Whether P.L. 8-32 is an unconstitutional legislative infringement upon the powers of the judiciary; (3) Whether retroactive application of P.L. 8-32 violates vested property rights; (4) Whether P.L. 8-32 violates appellants' rights to due process, equal protection, free speech and access to the courts.

appellees' motion for summary judgment and held as a matter of law that Realty Trust and Blanco Vende's purchase of the properly complied with Article XII, §5 of the Commonwealth Constitution.

## A. Realty Trust and Blanco Vende are valid NMD Corporations.

¶10 Article XII of the Commonwealth Constitution restricts the "acquisition of permanent and long-term interests in real property within the Commonwealth" to "persons of Northern Marianas descent." N.M.I. Const., art. XII, § 1. In 1976, the Constitution classified a corporation as a NMD so long as it:

a) is incorporated in the Commonwealth;
b) has its principal place of business in the Commonwealth;
c) has directors *fifty-one percent* of whom are persons of Northern Marianas descent; and
d) has voting shares *fifty-one percent* of which are of Northern Marianas descent.

N.M.I. Const. art. XII, § 5 (1976) (emphasis added).[2]

¶11 Thus, Realty Trust and Blanco Vende, when they were incorporated in 1981 and in 1983, had to meet the four prerequisites of Article XII, § 5 as stated above in order to be a properly formed NMD corporation so that the corporations could lawfully acquire, hold and transfer real property in the Commonwealth.

¶12 First, Realty Trust and Blanco Vende were incorporated under the laws of the CNMI on July 30, 1981, and July 8, 1983, respectively. Second, the principal place of business for both corporations have always been Saipan. Realty Trust's principal place of business is listed in its articles of incorporation as P.O. Box 859, Saipan, MP. The articles of incorporation list Blanco Vende's principle place of business as P.O. Box 795, Saipan, MP. Third, fifty-one percent of the directors for Realty Trust and Blanco Vende were NMDs. The initial directors of Realty Trust were Josefa K. Flores (NMD), Bernie S. Cabrera (NMD), and Roger Gridley (non-NMD) so that at least 2/3rds or 66% of the board of directors were NMDs. The initial directors of Blanco Vende were Rita H. Sablan (NMD), Bernie S. Cabrera

(NMD), and Riichi Yamamoto (non-NMD) so that at least 2/3rds or 66% of the board of directors were NMDs. Fourth, fifty-one percent of Realty Trust and Blanco Vende's voting shares were held by NMDs. Realty Trust issued 1000 shares of common stock at a par value of $1.00 each to Josefa K. Flores (250 shares), Bernie S. Cabrera (260 shares), Roger Gridley (260 shares) and First Commonwealth Corp. (240 shares). The combined total of the voting share of Realty Trust was therefore divided into 51% NMD, 49% non-NMD. Blanco Vende maintained a similar fifty-one, forty-nine percent, NMD, non-NMD split in voting shares, issued to: Rita H. Sablan (255 shares), Bernie S. Cabrera (255 shares), and Riichi Yamamoto (490 shares). At the time of the conveyance in 1983, Realty Trust and Blanco Vende met all the necessary requirements of being a NMD corporation. Therefore, as a matter of law, under Article XII, § 5, both corporations were and are qualified to own land in the Commonwealth.

## B. "Alter-Ego" Theory

¶13 Appellants also contend that since Realty Trust and Blanco Vende were the "alter ago" or "agent" of JAL, JAL acquired an impermissible fee simple interest in the property in violation of Article XII. Appellants' main argument is parallel to the one used in *Ferreira v. Borja*, 2 N.M.I. 514 (1992) *vacated* and *remanded Ferreira v. Borja*, 1 F.3d 960 (9th Cir. 1993), *Ferreira v. Borja*, 4 N.M.I. 211 (1995) .

¶14 In *Ferreira*, appellant Rosalia Mafnas Borja (Mafnas) asserted that although the legal title was held by Diana Ferreira, a qualified NMD, since the money for the purchase came from non-NMDs (James Grizzard, Barbara Grizzard, and Frank Ferreira), the non-NMDs acquired an impermissible equitable fee simple interest in the property under a resulting trust principle and the transactions should be declared void ab initio as violative of Article XII's restrictions on land ownership. On remand, this Court rejected both the agency and resulting trust theory and held the non-NMDs received no fee interest in the property and the NMD's interest was proper. *Ferreira v. Borja*, 4 N.M.I. at 212.

¶15 ■ We see no difference from the analysis in *Ferreira* to the arguments presented here. Appellants are asserting that Realty Trust and Blanco Vende acted as agents for JAL in purchasing the land in question and that JAL subsequently acquired an impermissible fee simple interest in the property. Under *Ferreira*, even *if* JAL provided the money to Realty Trust and Blanco Vende to purchase the property, JAL received no interest in the property and the transaction was proper.

## C. Piercing the Corporate Veil

¶16 Appellants further claim that Realty Trust and Blanco

[2] Article XII, § 5 was amended on January 7, 1986 to define a corporation as an NMD so long as: it is incorporated in the Commonwealth; has its principal place of business in the Commonwealth; has directors *one-hundred percent* of whom are persons of Northern Marianas descent; and has voting shares *one-hundred percent* of which are owned by persons of Northern Marianas descent. N.M.I. Const. art. XII, § 5 (1986) (emphasis added). This amendment was not made retroactive to corporations which were formed before January 7, 1996.

Vende were "shams" created to circumvent and usurp the intent of Article XII and as shams, they should be set aside by the Court. Appellants have failed to show how the local corporations were "shams." Mere allegations without unsupported evidence are insufficient. The Registrar of Corporation's filing of the articles of corporation is conclusive proof that the incorporators satisfied all conditions precedent to incorporation and once a corporation is incorporated, it exists until it is dissolved.[3] Because no evidence has been presented that a dissolution has occurred, Realty Trust and Blanco Vende continue to exist as lawful NMD corporations.

¶17 ■ "Piercing the corporate veil"is a doctrine of law which allows individual shareholders to be held personally liable for the debts of the corporation, and not to void the entity of the corporation itself. *United Enterprises, Inc. v. King*, 4 N.M.I. 304 (1995). Generally, a corporation and its shareholders are deemed "separate entities" and "shareholders are not liable to third parties" beyond their initial investment in the stock of the corporation. *Id.* at 307 (internal citations omitted). However, when the shareholders treat the corporation not as a "separate entity" but rather as an instrument to conduct their own personal business, the court may "pierce the corporate veil" for purposes of liability. *Id.* In the instant case, even if the Court were to pierce the corporate entity status of Blanco Vende and Realty Trust, the result would be that the individual shareholders (Bernie S. Cabrera, for example) would be personally liable for the debts of the corporation. The corporation would subsequently still continue to exist.

## II. The Superior Court did not err in denying the motion to disqualify the Carlsmith law firm.

---

[3] *Rules and Regulations of Corporations*, 12 Com. Reg. 6.922 (1990). There are two types of dissolutions: voluntary and involuntary. No evidence has been presented that a dissolution by either the parties or by an administrative or judicial entity has occurred.

In addition, prior to lending money to Blanco Vende, LDC sought, obtained, and relied upon assurances from the CNMI Government that Realty Trust was qualified under CNMI law to hold and transfer clear title to property. LDC obtained a written certification from Commonwealth Land Commissioner Antonio B. Camacho stating:

THIS IS TO CERTIFY THAT REALTY TRUST CORPORATION IS A REGISTERED NORTHERN MARIANAS CORPORATION ELIGIBLE TO HOLD AND TRANSFER CLEAR TITLE TO REAL ESTATE IN THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS.

Supp. E.R. at 68.

¶18 ■ The appellants' argue that Carlsmith should be disqualified because of the firm's representation of multiple clients with potentially adverse interests creating an impermissible conflict of interest. A threshold issue in the Superior Court was whether the plaintiffs had standing to contest Carlsmith's representation. The Superior Court noted that Rule 1.7 of the Model Rules of Professional Conduct[4] limits a non-client litigant's standing to disqualify opposing counsel based upon a conflict of interest only where the non-client litigant demonstrates "personal detriment or misconduct which taints the fairness of the proceeding" citing *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 219 (1990). The Superior Court found that the plaintiffs "failed to show how Carlsmith's representation would interfere with *their* respective rights to a fair judicial proceeding and would thus taint the underlying trial" and denied the plaintiffs' motion. *Tudela v. Layne*, Civ. No. 88-0715 (N.M.I. Super. Ct. July 15, 1993) (Order Denying Motion to Disqualify Carlsmith at 3) (emphasis in original) (citations omitted).

¶19 ■ We are not persuaded that the trial judge abused his discretion in denying appellants' motion to disqualify the Carlsmith law firm from representing multiple defendants. As indicated in the record, the firm obtained the consent of its clients to common representation after consultation regarding the implications of representing multiple parties.[5] Accordingly, we find no abuse of discretion in the trial court's decision.

## III. The Constitutionality of Public Law 8-32

¶20 Since we find that summary judgment was proper, and since we have previously noted that a court must never "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied", *Oden*, 3 N.M.I. at 202 (citations omitted), we find it

---

[4] Rule 1.7(b) of the Model Rules of Professional Conduct (1994 edition) provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[5] *See Declaration of Marcia K. Schultz in Opposition to Plaintiff's Motion for the Disqualification of the Carlsmith Law Firm*, E.R. at 4-10.

unnecessary to address the constitutionality of P.L. 8-32.

## CONCLUSION

¶21 For the reasons stated above, we hereby **AFFIRM** the Superior Court's September 6, 1995 granting of summary judgment in appellees' favor and **AFFIRM** the denial of plaintiff's motion to disqualify the Carlsmith Ball law firm.

---

MACK, Special Judge, concurring:

¶22 I concur in the decision, but write separately to note my differences with the majority's analysis. The central issue, as I see it, is whether the corporations, Realty Trust and Blanco Vende, were real or dummy corporations. This is an issue of both fact and law. I agree with the majority that the case was ripe for summary judgment consideration because the material facts were undisputed. Appellants dispute only the legal effect and conclusions to be drawn from the facts. The Superior Court can determine the legal consequences of facts on a summary judgment motion.

¶23 I disagree with the majority in its analysis to the effect that the doctrine of "piercing the corporate veil" cannot be used in conjunction with Article XII of the CNMI Constitution to challenge land transactions. Appellants could have succeeded, in my opinion, if they had presented facts to support their theory that the two corporations, Realty Trust and Blanco Vende, were mere shams. I disagree with the majority opinion in its holding that restricts the theory of disregarding the corporate status of an entity to instances where a litigant seeks to pin personal liability for debts upon individual shareholders. The benefits of incorporation can be denied, and the corporate status disregarded, in any instance where the legal entity is used to perpetuate a fraud, to justify a wrong, or to defeat justice.

¶24 The legal formation of a corporation is only one aspect in determining whether it exists as a real corporation or whether it is a sham. In my opinion, if Realty Trust or Blanco Vende were dummy corporations that were created only as business conduits for the actions of the non-NMD individuals who were controlling the transactions from behind the scenes,[6] then the Court could and should have looked behind the legal entity and assessed the true relationship between the stockholders and the corporation to determine which stockholders own the assets. *Cf. Dockstader v. Walker*, 510 P.2d 526, 528

(Utah 1973). [ "The term 'alter ego' is used to describe a situation where the courts go behind the corporate entity and hold a stockholder liable for the debts of the corporation *or to hold that it is the stockholder and not the corporation which owns the assets.*" (emphasis added).][7] I would thus hold that a sham corporation cannot hold title as a matter of law, regardless of a certification by government officials that the corporation is legally formed.

¶25 However, appellants, in my view, did not connect the dots between the facts and their asserted conclusion that the corporations in this case, namely Realty Trust and Blanco Vende, were sham corporations. Appellants did not cite even one case to support their conclusion that the numerous facts presented about the corporate entities[8] legally make them sham corporations.[9] Nor did appellants present evidence of facts traditionally considered[10] in determining whether to disregard the corporate status of an entity, despite having had more than three years from the commencement of the action in which to build its case.

¶26 The corporations were explicitly formed for the purpose of buying and selling real estate in the Commonwealth. The Superior Court had undisputed facts

---

[7] I agree with the majority that, as to Japan Airlines or its alternative corporate structures providing the seed money for the land purchase, the decision in *Ferreira v. Borja*, 2 N.M.I. 514 (1992) *vacated* and *remanded Ferreira v. Borja*, 1 F.3d 960 (9th Cir. 1993), *Ferreira v. Borja*, op. on remand, 4 N.M.I. 211 (1995), governs so that the Court cannot look at Japan Airlines as the alter ego of the purchaser. However, *Ferreira* does not prevent the Court from disregarding the corporate entity of the buyer under traditional corporation concepts and thus reaching the "alter ego" of the corporation.

[8] Appellants reported that the challenged corporations did not have an office, employees, office equipment, separate telephones, and had only little income. One of its shareholders was an employee of Jack Layne, the purported alter ego, and did not receive profits comparable to her corporate share ownership interest.

[9] Although the undisputed facts may have supported an argument in favor of such a legal conclusion, appellants have failed to go beyond the facts and cite any relevant case law; the Court is not required to complete the legal work for the appellants.

[10] Appellants have a heavy burden to meet to convince the Court to disregard the corporate entity. Those circumstances most often looked at in other cases involving piercing the corporate veil include: how much money each stockholder actually invested; what proof there was of the individual investments; bank records of the corporation showing capitalization and flow of the money; who controlled the deposits and withdrawals; who received the income or proceeds from the corporation's transactions; what corporate records were kept; what corporate formalities where adhered to; and who controlled the business.

[6] In this case, appellants alleged that real estate dealers, Jack Layne, Kim Batcheller and Roger Gridley, were the alter egos of the two corporations.

before it that the corporations were legally formed and that the alleged alter egos claimed no personal ownership interest in the land. I am unwilling to find that a corporation is a sham *per se* when it does not have an office, employee or equipment, and has little income. I am also unwilling to find that a corporation is a sham just because its formation allows persons not of Northern Marianas descent to gain long-term interests in realty to the maximum extent allowable by Article XII of the CNMI Constitution. I am thus unwilling to find, upon the record presented, that the Superior Court erred in its conclusion of law that the corporations were not shams.

¶27 Therefore, I would find no error in the Superior Court's legal conclusion, based on the facts presented on summary judgment, that Realty Trust and Blanco Vender were real corporations eligible to hold land at the time of the relevant transactions.

¶28 I concur with the majority opinion in its discussion of the "alter-ego" theory of *Ferreira* as it applies to Japan Airlines' involvement, and in the majority's analysis and holding on the motion to disqualify the Carlsmith law firm. I also concur in the decision to not consider the constitutionality of P.L. 8-32 on this case as presented and here emphasize that nothing in this decision should be construed as upholding the constitutionality of P.L. 8-32.

For all these reasons, I concur in the judgment.